In re Clyde J. BIPPERT, Jr. and Sandra Kay Bippert,
Debtors.

No. 03–53086–C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

May 27, 2004.

Callan M. Billingsley, San Antonio, TX, for Debtors.

James Bailey, for Marion A. Olson, Chapter 13 Trustee.

### MEMORANDUM DECISION ON TRUSTEE'S OBJECTION TO EXEMPTIONS

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the foregoing matter. The debtors, Clyde J. Bippert, Jr. and Sandra Kay Bippert, filed a chapter 13 petition (Doc. # 1) on June 2, 2003. Marion A. Olson, Jr., chapter 13 Trustee, timely filed his Trustee's Objection to Exemptions on (# 19) on August 19, 2003. The Trustee's Objection to Exemptions was set for hearing on October 9, 2003. After consideration of the pleadings and hearing the arguments of counsel, the court took this matter under advisement. This Memorandum Decision constitutes the court's findings of fact and conclusions of law. *See* FED.R.BANKR.P. 7052. For the reasons that follow, the court denies (in part) the Trustee's Objection to Exemptions.

### Facts

The facts are not in dispute. The debtors, Clyde J. Bippert, Jr. and Sandra Kay Bippert ("Bipperts"), filed their joint Voluntary Petition under Chapter 13 on June 2, 2003. The Bipperts filed their schedules and Statement of Financial Affairs on June 17, 2003 (Doc. # 7). The Debtors, in both their original and amended Schedules B and C filed on July 29, 2003 (# 16), elected to exempt property under 11 U.S.C. § 522(b)(1) (the federal exemptions). The only contested exemption involves a "premises liability claim against Discount Tire Co. for personal injuries" claimed as exempt under § 522(d)(11)(D) on both their original and amended Schedule C. The Bipperts claimed a total of $30,000.00 as the value of their claimed exemption for this personal injury claim. The claim had not been reduced to judgment or otherwise settled as of the date of the filing of the schedules.

The Trustee timely filed an objection to this particular exemption claim on August

19, 2003.[1] *See* Trustee's Obj. to Exemptions ("Trustee's Obj."). The Trustee objected because the debtors had testified at the § 341 meeting that it was Sandra Kay Bippert who had sustained the injury that resulted in the premises liability claim against Discount Tire Co. *See* Trustee's Obj. ¶ 6. The Trustee requested that the debtors' joint exemption for this personal injury claim be disallowed to the extent that it exceeds $17,425.00, because only Sandra Kay Bippert had suffered the injury (which occurred during a "slip and fall" accident at a Discount Tire Co. store). *See id.* The Trustee contended in his Objection that the Bipperts were improperly "stacking"[2] Clyde's § 522(d)(11)(D) exemption to get a total $30,000.00[3] exemption for Sandra Kay's personal injury claim, even though he himself had not been injured.

The Trustee's argument is simple. He claims that Clyde cannot take an exemption for an asset in which he has no property interest. The Texas Family Code, he argues, states that a recovery for a personal injury claim such as this is the "separate property" of the spouse who is injured. *See* TEX. FAM. CODE ANN. § 3.001(3) (Vernon 1997) ("[a] spouse's separate property consists of: ... (3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage"). Because the personal injury claim is, according to the Trustee, only the separate property of Sandra, and goes only into her estate, Clyde cannot claim any part of it as exempt, regardless what section 522(d)(11)(D) says, because the *sine qua non* for claiming an exemption is that the item must first be property of *the debtor's*

---

1. *See* FED.R.BANKR.P. 4003(b). The Trustee had to bring this objection even though the debtors in chapter 13 would not have to turn over any of their exempt property for estate administration anyway (by virtue of section 1306(b)). *See* FED.R.BANKR.P. 1019(1)(A) (when a chapter 13 case is converted to chapter 7, the schedules that were originally filed remain operative in the converted case unless the court orders otherwise); *see also Zibman v. Tow (In re Zibman)*, 268 F.3d 298, 302 (5th Cir.2001) (the relevant date for evaluating the extent of the estate and the scope of exemptions is the date of the petition); *Lowe v. Sandoval (In re Sandoval)*, 103 F.3d 20 (5th Cir.1997) (debtor's exemptions are determined as of the date the petition was filed, regardless whether it is later converted); *see also Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280, 26 C.B.C.2d 487 (1992) (the failure of a trustee to file a timely objection results in the allowance of the debtor's claimed exemption, even if the value of the exempt property would exceed the amount that would otherwise be available to be exempt under the applicable exemption law).

2. Before 1984, when a married couple filed a joint bankruptcy case, one spouse could choose the federal exemptions and the other the state exemptions. *See In re Graham*, 64

B.R. 469, 472 n. 3 (Bankr.S.D.Tex.1986); *see also In re Allen*, 725 F.2d 290, 292 (5th Cir. 1984). This version of "stacking" was no longer allowed after amendments to section 522(b) made by the Bankruptcy Amendments And Federal Judgeship Act of 1984. *See Graham*, 64 B.R. at 472 n. 3. Since 1984, the expression "stacking" has taken on a new and different meaning, now referring to the practice of one joint debtor taking an exemption in the same asset as his or her joint debtor, though both choose (as they must) the same exemption scheme. The practice, now termed "stacking," ought better be referred to as "doubling." For better or for worse, however, the case law and treatises discussing this practice use the term "stacking." In this opinion, when the word "stacking" is used, it refers to the practice of "doubling."

3. At the time the debtors filed their petition, § 522(d)(11)(D) permitted an exemption for a payment not to exceed $17,425 on account of personal bodily injury of the debtor or an individual of whom the debtor is a dependent. Under the debtors' "stacking" argument then, they could together conceivably have exempted up to $34,850.00 if they each claimed the same exemption up to the maximum allowed.

estate. Clyde being the debtor with respect to his estate, cannot claim as exempt property that is only property of Sandra's estate.

The Debtors, in response,[4] rely on what they say is the plain meaning of the statute: there are two people who have the right to claim an exemption under § 522(d)(11)(D): (1) the debtor and (2) an individual of whom the debtor is a dependent. *See* 11 U.S.C. § 522(d)(11)(D). Section 522(a)(1) defines "dependent" as including "spouse, whether or not actually dependent."[5] Thus, say the Debtors, Sandra can claim an exemption because she was the debtor who was injured, and Clyde can claim an exemption because he is an "individual of whom the debtor is a dependent." The Debtors claim that section 522(d)(11)(D) does not require that the dependent have a property interest in the personal injury claim. They also argue that it is irrelevant whether the personal injury claim is community property or separate property (Texas is a community property state).[6] Claim the Debtors, the phrase "an individual of whom the debtor is a dependent" in § 522(d)(11)(D) would be superfluous if the non-injured spouse could not claim the exemption.

Both parties agreed that joint debtors are allowed to "stack" or "double" their exemption claims in some kinds of assets under the federal exemption scheme, such as their homestead, vehicles, and other personal property. *See* 11 U.S.C. § 522(m) (section 522 applies separately with respect to each debtor in a joint case).

However, the Trustee argued that there is normally no real dispute with respect to the debtors' joint ownership of these items. It's not the "doubling" that's troubling to the Trustee, it's the claiming what's not Clyde's to claim. The Debtors counter that the federal exemption scheme contains some exemption categories that *are* explicitly keyed to property interest, but some that are not. Section 522(d)(2), for example, contains the words "[t]he debtor's *interest*, not to exceed $2,775 in value, in one motor vehicle." 11 U.S.C. § 522(d)(2) (emphasis added). Section 522(d)(11)(D), by contrast, does not contain a reference to "the debtor's interest." The statute only refers to "[t]he debtor's right to receive, or property that is traceable to-(D) a payment, not to exceed $17,425, on account of personal bodily injury ... of the debtor or an individual of whom the debtor is a dependent." Thus, say the Debtors, Congress knew how to key an exemption to a property interest and how not to, and chose not to with respect to the kinds of property eligible for exemption under section 522(d)(11)(D). They argue that the court need not consider whether a debtor or a dependent has a property interest in the payment on account of personal bodily injury because the plain meaning of the statute does not require it.

Because of the dearth of relevant case law at the time of the hearing, as well as the apparent ambiguity in § 522(d)(11)(D) regarding the words "right to receive, or property that is traceable to—a payment,"

---

4. Debtors did not file a formal responsive pleading. These arguments were made on the record in court.

5. *See* 11 U.S.C. § 522(a)(1); *see also* 4 ALAN N. RESNICK ET AL., COLLIER ON BANKRUPTCY ¶ 522.03[1], at 522–18 (15th ed., rev.2003) [hereinafter COLLIER ON BANKRUPTCY] (stating that the special definition of "dependent" applies only to section 522(d)'s federal exemptions and may have an important effect in the determination of which property is exempt in the eleven clauses granting exemptions under section 522(d)).

6. *See* TEX. FAM. CODE ANN. § 3.002 (Vernon 1997).

462

the court took the matter under advisement. This is the decision on the issue.

### Analysis

■ There is no factual dispute surrounding the essential issue presented here.[7] Thus, we have only to resolve the legal issue presented. We begin that process by closely examining the language and structure of section 522, and how that section works with other relevant sections of the Code. If the statutory language is plain, then our inquiry will be complete. *See, e.g., Lamie v. U.S. Trustee,* 540 U.S. 526, ——, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004) (stating that, " 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.' " (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000))).

Section 522(b) states that:

Notwithstanding section 541 [which generally defines the scope of "property of the estate"], an *individual debtor* may exempt *from property of the estate* the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.

11 U.S.C. § 522(b) (emphasis added). This is the operative portion of the exemption statute, the express authorization to claim property as exempt. Section 522(m) then addresses the issue of joint cases:

Subject to the limitation in subsection (b) [*i.e.,* the limitation on "stacking" state and federal exemptions], this sec-

tion shall apply *separately* with respect to *each debtor* in a joint case.

11 U.S.C. § 522(m). This is the section which expressly authorizes *each* debtor to claim their own exemptions, even though the debtors are married and so filed under a single case number. These two sections, read together, immediately pose a question for resolution: when section 522(b), the operative portion of the statute, authorizes "an individual debtor" to exempt "from property of the estate," does that phrase mean, in the context of a joint case, the property of *each* debtor, or does it mean rather the property of both debtors together?

### I. Whether "Property of the Estate" Under Section 522(b) in a Joint Case Filed Under Section 302 Means the Property of Each Debtor or the Property of Both Debtors

■ To help address this question, we next examine section 302, which deals with joint cases. That section provides as follows:

(a) A joint case under a chapter of this title is commenced by the filing with the bankruptcy court of *a single petition* under such chapter by an individual that may be a debtor under such chapter and such individual's spouse....

(b) After the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' *estates* shall be consolidated.

11 U.S.C. § 302 (emphasis added). Thus, though section 302 contemplates *one* case involving joint debtors, it still recognizes the legal fiction of *two* estates, which are not necessarily *consolidated* (as opposed to jointly administered under Rule 1015(b)).[8]

---

**7.** The Trustee did not challenge the basis for the exemption beyond the "property interest" legal argument outlined above, nor did the Trustee challenge the amount claimed as exempt, even though the actual recovery has yet

to be realized. By the same token, the debtor has *ipso facto* capped its exemption at $30,000.

**8.** The bankruptcy rules distinguish between consolidation and joint administration of es-

That is what the Eleventh Circuit held in *Reider v. FDIC (In re Reider)*, 31 F.3d 1102, 1108–09 (11th Cir.1994). Mr. Reider guaranteed a loan for the purchase of a stud horse. The loan was made by a bank to Mr. and Mrs. Reider's horse breeding business and to one Jack Johnson, a ne'er-do-well involved in numerous fraudulent schemes with the bank's president. Johnson failed to pay on the loan, the bank went bust, the FDIC took over the bank's "bad loans" in a purchase and assumption transaction, and promptly began to chase Mr. Reider on the guaranty. The Reiders filed a joint bankruptcy petition, pursuant to section 302. During the course of the case, the chapter 7 trustee sold the farm land where the horse breeding business had been located. The FDIC (an unsecured creditor in the case) insisted that the proceeds of the sale should be used to satisfy their guaranty claim, but they ran into resistance. Seems this farm land had

been inherited by *Mrs.* Reider from her mother, and so was never the property of *Mr.* Reider under state law. *See Reider*, 31 F.3d at 1103–04; *see also* 11 U.S.C. §§ 541(a)(1), (2).[9] And under state law, Mrs. Reider was not liable on the guaranty.

The FDIC in *Reider* responded to these arguments by asking the court to *substantively consolidate* the debtors' cases. The bankruptcy court granted that request, and the district court affirmed. On appeal to the circuit however, the lower courts were reversed.

The Eleventh Circuit, in a careful analysis, noted first and foremost that substantive consolidation is not presumed, not even in a joint case filed by a married couple pursuant to section 302. Instead, it can only be ordered when, after an examination of the evidence, the court finds that there is a substantial identity between the assets, liability, and handling of financial

---

tates. According to the Advisory Committee Note to Rule 1015,

> ... This rule does not deal with the consolidation of cases involving two or more separate debtors.... Consolidation, as distinguished from joint administration, is neither authorized nor prohibited by this rule since the propriety of consolidation depends on substantive considerations and affects the substantive rights of the creditors of different estates....
> ... Joint administration, as distinguished from consolidation, may include combining the estates by using a single docket for the matters occurring in the administration, including the listing of filed claims, the combining of notices to creditors of the different estates, and the joint handling of other purely administrative matters that may aid in expediting the cases and rendering the process less costly.
> ...
> ... A joint petition of husband and wife, requiring the payment of a single filing fee, is permitted by § 302 of the Code. Consolidation of such a case, however, rests in the discretion of the court. See § 302(b) of the Code.

FED.R.BANKR.P. 1015, Advisory Committee Note (1983), *reprinted in* NORTON BANKR. L. & PRAC. 2ND, BANKR RULES, at 49 (Thomson–West, 2003–2004 ed.).

9. Sections 541(a)(1) & (2) state:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal and equitable interests of the debtor in property as of the commencement of the case.
> (2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—
> (A) under the sole, equal, or joint management and control of the debtor; or
> (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

11 U.S.C. §§ 541(a)(1), (2).

affairs between the spouses, and that, based on the equities, harm would result if consolidation were not ordered that would outweigh the harm that would occur as a result of the consolidation. Issues such as fraud or bad faith on the part of the debtors may enter into the calculus, but so also would prejudice to creditors if consolidation were ordered (or not ordered). The court described the burden on the moving party as "exacting" and warned that substantive consolidation should be invoked "sparingly" if the request is met with opposition from either a creditor or a debtor. *Reider*, 31 F.3d at 1108–09. Finally, the court underscored that "[g]reat care must be taken to avoid confusion between the attributes of joint administration and indicia supporting substantive consolidation. *The filing of a joint petition by a husband and wife does not result in the automatic substantive consolidation of the two debtors' estates.*" *Id.* at 1109 (emphasis added). The conduct of joint spouses in jointly administering their estate in bankruptcy should, in the view of the court, be accorded "relatively little weight." *Id.*

In *Reider*, the application of these principles had a dramatic impact. The farm land could not be included among the assets of Mr. Reider to which the FDIC could look for a recovery. As they had no claim against Mrs. Reider, neither did they have any right to a distribution out of her separate estate. How the debtors had scheduled the asset was held to be irrelevant to the inquiry, said the court. The fact that only one trustee is appointed in a joint case, and that *that* trustee sold the property was also irrelevant. These, said the court, were but incidents of joint ad-

ministration, and said nothing about whether the estates should be combined into one. *See id.* at 1110–12.[10]

*Reider*, of course, does not directly interpret section 522(b). The Fourth Circuit, however, followed *Reider* in the context of joint debtors claiming exemptions. *See Bunker v. Peyton (In re Bunker)*, 312 F.3d 145, 153 (4th Cir.2002). The Fourth Circuit noted that, when spouses file a joint bankruptcy case, separate bankruptcy estates are created, from which each debtor may exempt eligible property. Said the court (in the context of a dispute regarding entireties property), "Joint administration of the married couple's estates does not affect their claims to [an] entireties exemption [available under section 522(b)(2)(B) ]." *See id.* at 153.[11]

▬ Under section 541(a), the estate of *each* debtor in a community property state consists of *his* or *her* property, *i.e.,* all legal or equitable interests of *him* or *her* in property as of the commencement of the case, plus *their* property, *i.e.,* all interests of the debtor (him or her) and that debtor's spouse in community property as of the commencement of the case. *See* 11 U.S.C. § 541(a). In a joint case, the community property swept into each debtor's estate, consisting of property under the sole, equal or joint management and control of that debtor as well as community property that is liable for an allowable claim against the debtor, or liable for a claim against both spouses jointly (to the extent of the debtor's interest in that property) will of necessity overlap. 11 U.S.C. § 541(a)(2).[12] *Excluded* from each debt-

---

10. *See also In re McKenzie Energy Corp.,* 228 B.R. 854, 874 (Bankr.S.D.Tex.1998) (joint administration was designed to promote procedural convenience and cost efficiencies, but does not affect the substantive rights of claimants or the respective debtor estates).

11. *See also In re Knobel,* 167 B.R. 436, 439–440 (Bankr.W.D.Tex.1994).

12. The property in this category is *de facto* substantively consolidated already under state law in community property states, such as

or's estate, however, is the *separate property* of the *other* spouse, as well as the sole management community property of the other spouse not otherwise liable for an allowable claim against that spouse.[13]

## II. Section 522(d) as a Subset of Section 522(b)

■ The Debtors here have argued that, even assuming two estates, section 522(d)(11)(D), by its plain language, nonetheless permits one spouse to lay claim to a category of property that, under state law, belongs only to the other spouse. That argument, however, misapprehends the function of the federal exemption scheme within the larger context of section 522 as a whole.

Again, section 522(b) is the operative part of the exemption statute. It permits an individual debtor to exempt from property of that individual's estate property listed under one of two exemption schemes. Here the debtors have selected the federal exemption scheme, so we turn to section 522(d). That section in turn lists the *kinds* or *categories* of property that may be exempted. *See* 11 U.S.C. § 522(d). By virtue of the way section 522(b) is worded, however, whatever cate-

gories of property are listed in subdivision (d) must first and foremost be a *subset* of property of that debtor's estate. The statute permits the individual debtor to "exempt[,] from property of the estate[,] *the property listed* in ... paragraph (1) [of section 522(b)]." 11 U.S.C. § 522(b) (emphasis and clarifying punctuation added); *see also In re Reider, supra.* The words "property listed," following directly the phrase "from property of the estate," refers then to one of two alternative locations for a listing—and both listings (federal or state) consist of *categories* of property *capable* of qualifying for exemption. That approach is in turn consistent with the way exemption statutes under state law have traditionally operated.[14] *See, e.g., In re Mitchell*, 103 B.R. 819, 823 (Bankr.W.D.Tex.1989) ("[debtors] must pick items off an approved list of items which, according to the legislature, are the sort of things sufficiently important for a Texas debtor to keep regardless of the claims of creditors"). The *entitlement* to exemption is conferred by subsection (b) of section 522. All that subsection (d) supplies is the approved list of items from which the debtor may select in *exercising* the entitlement in subsection (b). In no event can the set of exemptible items in

---

Texas. The property is jointly owned, and is not severable short of a divorce action, and is, by law, jointly liable for all debts incurred by the community. *See* TEX. FAM. CODE ANN. §§ 3.002, 3.003(a), 3.202(d) (Vernon 1997) (sections on community property, presumption of community property, and rules of marital property liability); *see also In re Knobel*, 167 B.R. 436, 440 (Bankr.W.D.Tex.1994) (in community property states, such as Texas, "property owned by one or both of the spouses may include the separate property of the wife, the separate property of the husband, 'special' or sole management community property of the wife and of the husband which is liable for the individual debts of the non-manager spouse, and jointly owned community property").

13. *See* 11 U.S.C. § 541(a)(2)(B).

14. Recall that, under the Bankruptcy Act, there was no scheme of federal exemptions. A debtor seeking to claim property as exempt was forced to rely on such exemptions as were otherwise available under non-bankruptcy law—usually the law of the state of the debtor's principal residence as of filing. *See* 2 EPSTEIN ET AL., BANKRUPTCY 8–1, at 451 (West 1992) (noting that under the old Bankruptcy Act, a debtor could only exempt property under local law and non-bankruptcy federal law); *see also* 4 COLLIER ON BANKRUPTCY ¶ 522.02[1], at 522–12–522–13 (15th ed., rev. 2003) (stating that debtors under the Bankruptcy Act were limited to the exemptions available under the state of their domicile).

subsection (d) be larger than the set of items available for exemption, *i.e.,* property of the debtor's estate, as provided in subsection (b).

■ The categories in subsection (d) thus do not furnish to the debtor an independent source of entitlements. They only furnish the basis for exempting, *from property of the estate,* certain property fitting within the definitions set out in subsection (d). A given item might be described in a category listed in subsection (d), but nonetheless not be available for exemption because the item is not included as part of that debtor's estate. Conversely, an item might be part of the debtor's estate, but not fit within any of the available categories. Or an item might be part of the debtor's estate and fit within a category, but still not be available because the total dollar amount allowed in that category may already have been used up selecting other items. *See Mitchell,* 103 B.R. at 823.[15]

With this backdrop, we can move on to the next two questions. First, could any portion of this personal injury action be property of Clyde's bankruptcy estate? Second, if some portion is, is that property

eligible for exemption under section 522(d)(11)(D)? We turn to the property interest question first.

### III. *The Personal Injury Claim as Property of the Estate Under § 541*

■ Property of the estate includes "all legal and equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541(a)(1); *see also United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1983). A debtor's pre-petition personal injury cause of action is property of the estate, even if it is not yet liquidated (indeed, even if the lawsuit to recover on the claim has not yet been filed). *See In re Wischan,* 77 F.3d 875, 877–78 (5th Cir. 1996).

As we have earlier noted, property of the estates of joint debtors can be subclassified as *his* property, *her* property, and *their* property, with the last class overlapping (*i.e.,* both estates have the same interest in this last class of property).[16] Section 541(a)(2) includes as part of property of the estate "all interests of the debtor and the debtor's spouse in community property as of the commencement of

---

**15.** And that is the error of Debtors' argument. It rests on a faulty premise. When the Debtors argue that Clyde can claim an exemption in Sandra's personal injury right to payment, that argument necessarily starts by reading subsection (11) of section 522(d) in isolation. The Debtors read "[t]he debtor's right to receive ... a payment ... on account of personal bodily injury ... of ... an individual of whom the debtor is a dependent" as though the words "right to receive" created an entitlement. If the statutory phrase is read in context with section 522(b), however, the error becomes clear. Clyde, one debtor, can claim as exempt *from property of his estate,* property fitting within the categories listed in subsection (d) of section 522. Subsection (d) says that 11 categories and subcategories of property (from property of Clyde's estate) are *available* for exemption *See* 11 U.S.C.

§ 522(d) ("may be exempted"). Subsection 11 then lists one subcategory of property that might be capable of being exempted: Clyde's right to receive, or property that is traceable to, a payment on account of personal bodily injury of an individual of whom Clyde is a dependent (that would be Sandra). If Clyde is allowed to claim some part of the personal injury award as exempt, it will only be because some part of the award is first and foremost part of his bankruptcy estate.

**16.** *See, e.g., In re Knobel,* 167 B.R. 436, 440 & n. 9 (Bankr.W.D.Tex.1994) (when a joint petition is filed, there are two estates each consisting of each spouse's respective separate property and sole management community property, plus the marital community's interest in joint community property).

the case that is (A) under the sole, equal, or joint management and control of the debtor ...." 11 U.S.C. § 541(a)(2)(A). Three classes or "baskets" of property are created in a joint case, with each debtor's estate consisting of all of the property in *two* of those baskets. In our case, for example, Clyde's estate consists of *his* property and *their* property. Sandra's estate consists of *her* property and *their* property. The fact that both Clyde's and Sandra's estates claim the same interest in all of the property in the *their* basket does not lessen the fact that *both* of them, when it comes to exemptions, can draw from property in that basket (a feature that comes into play when we discuss how "stacking" works later in this opinion).

Using this "three basket" analytical tool, we turn next to the personal injury cause of action to see how, under Texas law, portions of the overall cause of action can fall into each of the three baskets. To do this, we turn to the community property law of the state of Texas (the residence of these debtors).

**IV. *Community and Separate Property for Personal Injury Claims in Texas***

■ Under the Texas Family Code, a "spouse's separate property consists [*inter alia*] of: ... the recovery for personal injuries sustained by the spouse during marriage, *except any recovery for loss of earning capacity during marriage.*" TEX. FAM. CODE ANN. § 3.001(3) (Vernon 1997) (emphasis added). Community property in general "consists of the property, *other than* separate property, acquired by either spouse during marriage." TEX. FAM. CODE

ANN. § 3.002 (Vernon 1997) (emphasis added). Thus, under section 3.001(3), a direct recovery on account of personal injury damages suffered by a spouse is the separate property of that spouse. *See* TEX. FAM. CODE ANN. § 3.001(3) (Vernon 1997); *see also Lester v. United States,* 487 F.Supp. 1033, 1039 (N.D.Tex.1980). The damages that constitute the separate property of the injured spouse in Texas include those for disfigurement and for physical pain and suffering in the past and in the future. *See Osborn v. Osborn,* 961 S.W.2d 408, 414 (Tex.App.—Houston [1st Dist.] 1997, reh'g of pet. for rev. overruled).[17]

■ By the same token, however, damages which are attributable to an injury to the *marital partnership* are community property. *See Osborn v. Osborn,* 961 S.W.2d at 414. Thus, portions of a personal injury award may belong to the community estate, including damages for lost wages of the injured spouse, medical expenses incurred by the estate, and other expenses associated with injury to the community estate. *See* TEX. FAM. CODE ANN. §§ 3.001(3) & 3.002 (Vernon 1997); *see also Wilson v. Wilson,* 132 S.W.3d 533 (Tex.App.—Houston [1st Dist.] 2004); *Cottone v. Cottone,* 122 S.W.3d 211 (Tex. App.—Houston [1st Dist.] 2003) (stating that, although a recovery for personal injuries sustained by a spouse during marriage is generally that spouse's separate property, portions of the personal injury award belong to the community estate, including damages for lost wages, medical expenses, and other injury-related community expenses); *Osborn,* 961 S.W.2d at 414 (same).

**17.** It is worth a note here to explain that we are only discussing at this point what comes *into* the estate (and into which basket it might fall). We are not yet ready to deal with what comes *out of* the estate by virtue of an exemption under section 522(d)(11)(D). The court recognizes that, though Texas makes damages for pain and suffering the separate property of the injured spouse, the federal exemptions do not permit the debtor to *exempt* that par-

468

■ Damages that the non-injured spouse suffered for loss of consortium are, under Texas law, the separate property of the non-injured spouse. *See Osborn*, 961 S.W.2d at 414; *see also Whittlesey v. Miller*, 572 S.W.2d 665, 669 (Tex.1978).[18] With this general background in Texas community property law as it applies to personal injury claims, we can see how each bankruptcy estate has a piece of the cause of action.

### A. Clyde Bippert's Property Interest in the Personal Injury Claim

■ In this case, the bankruptcy estate of Clyde, the non-injured spouse, first has a property interest in Sandra's personal injury recovery to the extent that the marital estate has suffered injury, including medical expenses incurred by the marital estate and loss of earning capacity on the part of Sandra (earnings during a marriage are presumed to be community property). *See* 11 U.S.C. § 541(a)(2)(A); *see also* TEX. FAM. CODE ANN. § 3.003(a) (Vernon 1997); *Watson v. Beaty*, 370 S.W.2d 790, 791 (Tex.Civ.App.—Eastland 1963, writ ref. n.r.e.); *In re Norton*, 180 B.R. 168, 170 (Bankr.E.D.Tex.1995). This property goes into the "their" basket. Clyde also has a property interest in the personal injury claim to the extent that it is attributable to loss of consortium. *See Osborn v. Osborn*, 961 S.W.2d 408, 414 (Tex. App.—Houston [1st Dist.] 1997, reh'g of pet. for rev. overruled). This property

goes into the "his" basket. Thus, included in Clyde's bankruptcy estate is property attributable to the personal injury claim arising from injuries to Sandra, even though Clyde was not the party who actually suffered the physical injury. This answers the first question posed earlier: does Clyde's estate have any property interest in the personal injury claim, such that he could satisfy the first prerequisite under section 522(b)? The answer is, yes he does.[19]

### B. Sandra Bippert's Property Interest in the Personal Injury Claim

■ As for Sandra Bippert, under the Texas Family Code, she clearly has a separate property interest in the recovery "... for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage." TEX. FAM. CODE ANN. § 3.001(3) (Vernon 1997). This would include damages for disfigurement, as well as damages for pain and suffering. *See Osborn*, 961 S.W.2d at 414. This interest falls into the "her" basket of property. But Sandra's estate also has a property interest in property in the "their" basket, which we have already noted consists of any recovery for damages to the marital estate. *See* 11 U.S.C. § 541(a)(2)(A). Because it is included in the "their property" category of Sandra's property interests, it also over-

ticular right of recovery. See discussion *infra* at Pt. V. A.

18. The loss of spousal (as opposed to a parent-child loss of companionship) consortium includes the loss of affection, solace, companionship, society, assistance, and sexual relations necessary to a successful marriage, 28 TEX. JUR. 3D DAMAGES § 304 (2004). Even though "loss of consortium" is sometimes referred to as a cause of action, it is actually just an element of noneconomic damages that can be awarded. *See* 39 TEX. JUR. 3D FAM. LAW § 107 (2004).

19. Unfortunately, the personal injury claim has not yet been liquidated, much less allocated. Fortunately (for the Debtors), the Trustee did not raise an objection to the Bipperts' claim beyond the legal claim discussed in this decision. Therefore, the court is free to presume that some portion of the total damage award is attributable to each of these categories of assets. As such, they would at least potentially be eligible for exemption under section 522(d)(11)(D).

laps with Clyde's estate.[20]

## V. *Applying § 522(d)(11)(D)*

The foregoing analysis has established, under the framework we have laid out for handling exemption claims in joint cases, that the bankruptcy estates of both Clyde and Sandra could have, as a matter of law, a property interest in the personal injury claim, such that the first prerequisite for claiming an exemption under section 522(b) is satisfied. The next step is to determine whether those interests are eligible for exemption under the federal exemption scheme chosen by the debtors.

### A. *Sandra's Exemption Claim*

With respect to Sandra, she is permitted to claim, out of property of her estate, property of a value not to exceed a total of $17,425, so long as it fits within the categorization described in section 522(d)(11)(D). She at least conceivably has, first of all, a property interest in the personal injury claim for direct injuries to her, which property is found in the "her" basket.

Only a portion of the property in the "her" basket is actually eligible for exemption, however. The federal exemption scheme does not permit her to keep for herself as exempt that part of her separate property personal injury claim that is attributable to pain and suffering. *See* 11 U.S.C. § 522(d)(11)(D).[21] Thus, even though a recovery attributable to pain and suffering comes *into* her estate, and falls into the "her" basket, it cannot be taken back out as exempt, because of the restriction on exemptibility in section 522(d)(11)(D).

In the *their* basket are losses suffered by the marital estate, including loss of earning capacity, medical expenses incurred by the marital estate, and any other losses ascribable to the marital estate, suffered as a result of the injury. To the extent that Sandra has not already exhausted the $17,425 allowed to her by withdrawing property from the "her" basket, she can take property out of the *their* category of estate property, though again subject to the limitations in section 522(d)(11)(D) itself.

The statute prohibits exemption of the personal injury award if it is "compensation for actual pecuniary loss" of the debtor. A payment for loss of earning capacity is an actual pecuniary loss,[22] and so does not qualify for exemption under section 522(d)(11)(D).[23] Thus, even though

---

**20.** Once again, we note that, because the Trustee did not object to the categorization of the property interests in question here, we do not need to actually break down the $30,000 worth of exemption value claimed by Clyde and Sandra. It is enough for our purposes here to conclude that some portion (albeit unknown in amount) of the personal injury claim could be included as a matter of law in Sandra's estate, part in the "her" basket, and part in the "their" basket.

**21.** The statutory sentence, elided for clarity, reads as follows: "The following property may be exempted under subsection (b)(1) of this section: ... (11) The debtor's right to receive ... (D) a payment ... on account of personal bodily injury, *not including pain and suffering* ...."

**22.** *See* 11 U.S.C. § 522(d)(11)(D). The statutory sentence, again elided for clarity, reads as follows: "The following property may be exempted under subsection (b)(1) of this section: ... (11) The debtor's right to receive ... (D) a payment ... on account of personal bodily injury, *not including ... compensation for actual pecuniary loss* ...."

**23.** It might be exemptible under § 522(d)(11)(E) (loss of future earnings), subject to the restrictions there stated, or under § 522(d)(5) ("wild card") if it has not already been used. *Compare In re Rockefeller*, 100 B.R. 874, 876–77 (Bankr.E.D.Mich.1989) (allowing an injured chapter 12 debtor to take a § 522(d)(11)(E) exemption, but not a § 522(d)(11)(D) exemption, for a personal in-

Sandra has a property interest in this element of damages, it is nonetheless not eligible for exemption under the express language of section 522(d)(11)(D). Other losses suffered by the marital estate, however, including medical expenses, might not be so limited and so could conceivably be claimed (again, up to the dollar cap).[24]

### B. Clyde's Exemption Claim

As earlier noted, Clyde has a separate property interest under state law for loss of consortium, which falls into the *his* basket. Clyde also has a community property interest in the losses suffered by the marital estate, just as Sandra does. This pulls the selfsame community property that was in Sandra's estate into his estate as well (*i.e.*, they overlap). This is property in the "their" basket.

■ Contrary to the position of the Trustee, section 522(d)(11)(D) in fact *does* permit Clyde to claim as exempt part of Sandra's personal injury claim, because Clyde has (or at least potentially has) a property interest in the personal injury

claim. To see why this is the case, it is helpful to restate the statute, substituting the word "Clyde" for the word "debtor." Clyde can, when he chooses the federal exemptions, claim the following property as exempt: "[Clyde's] right to receive, or property that is traceable to a payment ... on account of personal bodily injury ... of [Clyde] or an individual of whom [Clyde] is a dependent." 11 U.S.C. § 522(d)(11)(D) (as restated). As we have seen, Clyde, as a member of the marital estate, could have a right to receive payment on account of a personal bodily injury to Sandra to the extent that payment is damages for losses suffered by the marital estate. *See* Tex. Fam. Code, § 3.001(2) (Vernon 1997). Under the federal exemption scheme, that right to receive payment is exemptible (assuming it does not count as a payment for actual pecuniary loss) even though the personal injury was suffered by Sandra, not him ("on account of personal bodily injury ... of an individual of whom [Clyde] is a dependent,") *i.e.* Sandra (by virtue of section 522(a)(1)). Alternatively, the damages attributable to the

jury recovery because the entire payment was in compensation for loss of future earnings) *with In re Russell*, 148 B.R. 564, 566 (Bankr. E.D.Ark.1992) (in a chapter 13 case, because of the disjunctive nature of § 522(d)(11), a debtor must elect between §§ 522(d)(11)(D) or (E) with regard to a personal injury award). However, in this case the Debtors did not make a claim for an exemption under § 522(d)(11)(E), so we do not reach that issue.

24. There is some dispute over whether medical expenses incurred by the marital estate may also be excluded from exemption as "compensation for actual pecuniary loss." *See, e.g. In re Claude*, 206 B.R. 374, 376–77, 381 (Bankr.W.D.Pa.1997) (compensation for medical expenses could not be claimed under section 522(d)(11)(D) because it constituted an actual pecuniary loss); *see also* 4 Collier on Bankruptcy ¶ 522.09[11], at 522–67 (15th ed., rev.2003) (according to the legislative

history, it would not be necessary to allow exemption for reimbursement for medical expenses because Congress presumed that medical providers already had a constructive trust on any personal injury award for their expenses, and the constructive trust would not be property of the estate anyway). Congress' underlying presumption about constructive trusts may have been flawed, however. *See Haber Oil Co., Inc. v. Swinehart (In re Haber Oil Co., Inc.)*, 12 F.3d 426, 435–37 (5th Cir. 1994) (warning that constructive trust is a court-ordered remedy, not an interest in property). It is unnecessary for the court to resolve this difficult issue in this opinion because the Trustee's objection does not raise that challenge. For the analytical purposes of this decision, we assume that such expenses *are* capable of being claimed as exempt, with the caveat that we do not actually decide the question here (because we do not have to).

marital estate's losses are "property that is traceable to-a payment . . . on account of personal bodily injury . . . of . . . [Sandra]." 11 U.S.C. § 522(d)(11)(D) (as restated). This is how the term "dependent" functions in section 522(d)(11)(D) to afford the non-injured spouse the ability to claim an exemption in a personal injury claim arising from an injury to Sandra. Thus, both the Debtors and Trustee got this wrong. The term "dependent" here does not give Clyde the right to "expand" his exemptions beyond what is includable within his estate (as the Debtors had argued). However, the term *does* permit Clyde to exempt property that is already in his estate, even though he was not the person directly injured (countering the Trustee's argument).

The same limitation that applied to Sandra also applies to Clyde. When Clyde claims an exemption under this section to property in the *their* category, consisting of injuries suffered by the marital estate, he cannot claim as exempt losses suffered by the marital estate for lost earning capacity, because that would be "compensation for actual pecuniary loss." Again, we will presume, for the sake of this opinion only, that he could make an exemption claim for medical expenses incurred by the estate, with the same caveat that we are not deciding here whether, as a matter of law, such expenses are or are not in fact exemptible. *See* note 24 *supra.*

■ Clyde can also exempt (up to the dollar cap permitted in the statute) qualified property out of the "his" basket. In this case, that could include any claim for loss of consortium. These damages constitute "[Clyde's] right to receive . . . a payment . . . on account of personal bodily injury . . . of . . . [Sandra]." *See* 11 U.S.C. § 522(d)(11)(D) (as restated).

### C. The Overlap Between Clyde's Estate and Sandra's Estate

■ As has been previously noted, the Trustee does not contest, as a general matter, the Debtors' right to "stack" their exemptions—here using stacking in the sense of "doubling."[25] The Trustee appears to be troubled by the Debtors' stacking exemptions with respect to a personal injury claim that belongs only to Sandra. The Debtors counter that the statute is plain and that they can. As should now be clear, the Debtors are wrong to rely on section 522(d)(11)(D) for their assertion that Clyde can simply "double" Sandra's exemption claim. Stacking (or doubling) is permitted, true enough, but only with respect to property withdrawn from the *their* basket.[26] Clyde cannot "double" Sandra's exemption claim to property that she withdrew from the *her* basket, because

---

**25.** "Stacking" (or more properly, doubling) exemptions is clearly permissible. Section 522(m) gives express statutory authorization for doubling in joint cases, by allowing each debtor to apply the same exemption scheme to the same item of property, so long as that item is included in each estate. *See* 11 U.S.C. § 522(m); *see also In re Gallo,* 49 B.R. 28, 30 (Bankr.N.D.Tex.1985).

**26.** *See, e.g.,* 4 COLLIER ON BANKRUPTCY ¶ 522.09[1], at 522–50 (stating that, if a homestead is owned jointly by a husband and wife, additional exemption protection is provided by § 522(m), which states that § 522 applies separately with respect to each debtor in a joint case, subject to the prohibition on mixing and matching of federal and state exemptions); *see also In re Gallo,* 49 B.R. 28, 30 (Bankr.N.D.Tex.1985) (holding that the husband and wife joint chapter 7 debtors were allowed to "stack" their federal homestead, automobile, and household furnishings exemptions); 28 TEX. PRAC., CONSUMER RIGHTS AND REMEDIES § 16.6 n. 56–60 (3d ed.2003) (stating that a husband and wife filing jointly can double the amounts of the equity in such personal property as one vehicle, personal jewelry, tools of the trade, and unmatured life insurance policies, for exemption purposes).

that belongs only to Sandra's estate, not Clyde's.

To see how this works, a hypothetical may be helpful. Let's suppose that Clyde had a $5,000 damages award for loss of consortium, and Sandra had a damages award for actual injury in the amount of $15,000. Both of these interests are separate property interests—Sandra's estate would have no interest in Clyde's $5,000, and Clyde's estate would have no interest in Sandra's $15,000. Property in the *his* basket is not in Sandra's estate. Property in the *her* basket is not in Clyde's estate.

Lets then further suppose that there is an additional award for $40,000 for medical expenses, which we will presume for purposes of this opinion would otherwise qualify as exemptible. This award would, under Texas law, be community property, and so would, under section 541(a)(2)(A), be property of *both* estates, Clyde's and Sandra's. The estates' interest simply overlap. The entire $40,000 would be in the *their* basket. We need not split up this money between the two estates, because both estates own whatever is in the *their* basket. For exemption purposes, then, *each* debtor can dip into the *same* basket and take out as much as is available, up to their respective dollar limits. And this is where the "stacking" or "doubling" takes place.

In our hypothetical, Clyde has used up $5,000 of his $17,425 personal injury exemption to shelter his separate property interest in the loss of consortium award. He can then dip into the *their* basket to withdraw another $12,425 from the $40,000 worth of damages for medical expenses. That will leave $27,675 in the *their* basket.

Sandra, meanwhile, has used up $15,000 of her exemption sheltering her separate property personal injury award. She has only $2,425 worth of exemption left. She also can dip into the *their* basket, with-

drawing that much out of the remaining $27,675 to complete her exemption claim. That will leave $25,250 in the *their* basket, not claimed as exempt, and so available for distribution to creditors by the trustee for the jointly administered estates.

Of course, Sandra and Clyde made choices in the foregoing hypothetical. They could have made different choices. Sandra and Clyde might have decided to each dip into the *their* basket first, using all of their respective $17,425 worth of exemptions. *See* 11 U.S.C. § 522(m). Between them, they could have sheltered $34,850 in damages attributable to medical losses. If they made this choice, they would have effectively "doubled" the section 522(d)(11)(D) exemption, simply because there was enough property in the *their* basket for both of them to satisfy their respective exemption entitlement. If they made this choice, neither would have anything left with which to shelter their respective separate property interests, which would then stay with the bankruptcy estate (or, more properly, estates) for distribution to creditors.

 This is the sort of stacking that is permissible. Joint debtors can effectively "double" the value of the exemption in section 522(d)(11)(D), as they can in other subsections of section 522(d), but only when they are seeking to exempt property coming out of the *their* basket of property. What is *not* permissible, however, is for Clyde to "double" Sandra's exemption claim in her separate property. Suppose, for example, that we were to change the foregoing hypothetical to eliminate the damage claim for medical expenses for $40,000. Clyde has only his $5,000. Sandra has only her $15,000. Clyde could not "double" Sandra's $15,000, even though Clyde is a dependent of Sandra. Why? Because, in the first instance, Clyde cannot

exempt what he does not have, and he would not, in this hypothetical, have a property interest in Sandra's $15,000. Property in the *her* basket is not property in Clyde's estate.

### Conclusion

For the reasons stated, the Trustee's objection to exemption is overruled and the Debtors' exemptions in the personal injury action are allowed, up to the $30,000 amount listed by the Debtors in Schedule C.

An order consistent with this Memorandum Decision will be filed separately.