**Lon McVey OSBORN, Appellant,**

v.

**Sara OSBORN, Appellee.**

No. 01–96–00615–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 21, 1997.

Rehearing Overruled Oct. 20, 1997.

Russell Joseph Raia, Jr., Spring, for Appellant.

Sallee S. Smyth, Houston, for Appellee.

Before O'CONNOR, HEDGES and BASS,* JJ.

* The Honorable Sam Bass, retired Justice, Court of Appeals, First District of Texas at Houston,

## OPINION

O'CONNOR, Justice.

Lon McVey Osborn appeals from a post-answer default judgment rendered against him in favor of Sara Osborn. We affirm in part and reverse and remand in part.

### Facts

After 13 years of marriage, Sara Osborn sued Lon McVey Osborn for divorce.[1] Lon answered through his attorney, Elton L. Brownshadel. On March 27, 1995, the trial court issued a scheduling order setting the case for trial on October 9, 1995. The scheduling order contains Brownshadel's name and address. On October 2, 1995, the trial court signed an order permitting Brownshadel to withdraw as Lon's attorney of record.

On October 16, 1995, the trial court issued a second scheduling order setting the case for trial on January 8, 1996. The words "presently *pro se*" were handwritten beside the area designated for Lon's attorney's name. Beside the area designated for Lon's attorney's address were the handwritten words, "as in file."

On January 8, 1996, the case was called for trial, and Sara's attorney announced ready. Lon did not appear. Concerned about his absence, the trial court reset the case to January 11, 1996, and instructed Sara's attorney to send Lon a letter via messenger notifying him of the change. Sara's attorney arranged for a messenger service to deliver such a letter to Lon on January 8th. According to the messenger service's delivery sheet, nobody answered, so the messenger service taped the letter to Lon's front door.

On January 11, 1996, the case was called for trial. Sara's attorney announced ready, and again, Lon did not appear. The trial court waited approximately 15 minutes before proceeding with the bench trial. The final decree of divorce was signed January 17, 1996.

Lon obtained counsel and filed an unverified motion for new trial alleging he did not appear at the final hearing because (1) his attorney had medical problems; (2) he was involved with a personal injury lawsuit against Dr. Howard Cotler; and (3) he did not have actual notice of the final hearing. Lon also claimed (1) the second scheduling order was illegible; (2) the entry on the messenger service's sheet did not affirmatively state he was given notice; (3) he had a meritorious defense, namely that Sara is not entitled to 30% of any recovery in his personal injury lawsuit against Dr. Cotler; and, finally, (4) the granting of a new trial would not injure Sara.

The district court held a hearing on the motion for new trial, heard evidence in support of the motion, and overruled it.[2] After the hearing, Lon asked the trial court to make findings of fact and conclusions of law regarding the evidence heard at the motion for new trial hearing. On appeal, Lon challenges some of those findings.

### Post–Answer Default

■ We review the trial court's ruling on a motion for new trial based on the abuse of discretion standard. *Director v. Evans,* 889 S.W.2d 266, 268 (Tex.1994) (denial of motion for new trial after default judgment); *Cliff v. Huggins,* 724 S.W.2d 778, 778–79 (Tex.1987) (same). To set aside a post-answer default on grounds of lack of notice, the defendant must show his failure to attend trial was not intentional or the result of his conscious indifference, but was due to an accident or mistake. *See Lopez v. Lopez,* 757 S.W.2d 721, 723 (Tex.1988); *Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124, 126 (1939).

Here, Lon was required to show his failure to attend was not intentional or the result of conscious indifference, but was due to his failure to receive actual or constructive notice of the trial setting. *See Lopez,* 757 S.W.2d at 723. If Lon made this showing, the trial

---

participating by assignment.

1. For convenience, we will refer to the parties by their first names.

2. There were actually two hearings on the motion for new trial. The first hearing was before a master and, because Lon appealed the master's finding, a second one was before the district court. We have no record from the first hearing.

court abused its discretion by denying him a new trial. *See Green v. McAdams,* 857 S.W.2d 816, 818 (Tex.App.—Houston [1st Dist.] 1993, no writ).

### Lack of Notice

In point of error one, Lon complains the trial court abused its discretion in proceeding to final judgment without giving him adequate notice of the trial setting as required by TEX.R. CIV. P. 245 and the Due Process Clause of the United States Constitution. In point of error two, Lon complains the trial court erred in denying his motion for new trial because he was not given adequate notice of the trial setting as required by rule 245 and the United States Constitution. In points of error three and four, Lon complains that the evidence is legally and factually insufficient to support the trial court's finding that Lon was properly notified of the trial setting on at least two separate occasions.[3]

■ Rule 245 provides in relevant part:

The court may set contested cases on written request of any party, or on the court's own motion, with reasonable notice of not less than forty-five days to the parties of a first setting for trial, or by agreement of the parties; provided, however, that when a case previously has been set for trial, the Court may reset said contested to a later date on any reasonable notice to the parties or by agreement of the parties.

TEX.R. CIV. P. 245. The plain import of rule 245 is that the court must give 45 days notice of the first trial setting, but may reset the case to a later date on any reasonable notice. *Bell Helicopter Textron, Inc. v. Abbott,* 863

S.W.2d 139, 140 (Tex.App.—Texarkana 1993, writ denied); *State Farm Fire & Cas. Co. v. Price,* 845 S.W.2d 427, 431–32 (Tex.App.—Amarillo 1992, writ dism'd by agr.). The notice requirements of rule 245 are satisfied by serving the party himself (if he is *pro se* ), his agent, or his attorney (if the party is represented by counsel) under the provisions of rule 21a. *Bruneio v. Bruneio,* 890 S.W.2d 150, 155 (Tex.App.—Corpus Christi 1994, no writ). Rule 21a provides that all notices, other than citation, may be served by delivering a copy to the party either in person, by agent, by courier receipted delivery, or by certified or registered mail, to the party's last known address. TEX.R. CIV. P. 21a.

■ The law presumes a trial court hears a case only after proper notice to the parties. *Bruneio,* 890 S.W.2d at 155; *Hanners v. State Bar of Texas,* 860 S.W.2d 903, 908 (Tex.App.—Dallas 1993, no writ); *Jones v. Texas Dep't of Public Safety,* 803 S.W.2d 760, 761 (Tex.App.—Houston [14th Dist.] 1991, no writ); *Trevino v. Gonzalez,* 749 S.W.2d 221, 223 (Tex.App.—San Antonio 1988, writ denied); *see also Cliff v. Huggins,* 724 S.W.2d 778, 780 (Tex.1987) ("Rule 21a sets up a presumption that when notice of trial setting properly addressed and postage prepaid is mailed, that the notice was duly received by the addressee."). A recitation of due notice of the trial setting in the judgment constitutes some, but not conclusive, evidence that proper notice was given. *Wilson v. Indus. Leasing Corp.,* 689 S.W.2d 496, 497 (Tex.App.—Houston [1st Dist.] 1985, no writ). However, if a judgment is effectively rebutted by other evidence in the record, this presumption of proper notice is no longer taken to be true. *Id.*

---

**3.** Even though Lon terms points of error three and four as challenges to the legal and factual sufficiency of the evidence, we will consider Lon's points of error three and four as alleging the trial court abused its discretion in overruling Lon's motion for new trial. As stated above, the standard of review of a trial court's ruling on a motion for new trial is abuse of discretion. *Director,* 889 S.W.2d at 268. Findings of fact are not necessary to review the trial court's ruling on a motion for new trial. *Baley v. W/W Interests, Inc.,* 754 S.W.2d 313, 316 (Tex.App.—Houston [14th Dist.] 1988, writ denied). Rule 296, regarding a request for findings of fact, applies to "any case tried in the district or county court

without a jury." *IKB Indus., Ltd. v. Pro–Line Corp.,* 938 S.W.2d 440, 441–42 (Tex.1997). A hearing on a motion for new trial is not a *"case tried ... without a jury."* TEX.R. CIV. P. 296 (emphasis added). Findings of fact that are filed after the trial court holds a hearing on a motion for new trial and receives evidence can be helpful. *Cf. Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 851 (Tex.1992) (findings after hearing on sanctions can be helpful). However, we do not give findings not required by Rule 296 the same deference we give findings filed after a case tried to the court instead of a jury. *IKB Indus.,* 938 S.W.2d at 442 (findings after sanctions); *Chrysler,* 841 S.W.2d at 852 (findings after sanctions).

■ In this case, the final decree of divorce recites the following:

Respondent, LON McVEY OSBORN, Pro Se, ..., and whose address is 1855 Witte Road, Houston, Texas 77080, was duly and properly cited, and was given a copy of this Court's Scheduling Order setting this case for trial, and was given messenger notice of this trial setting, but failed to appear.

Thus, we can presume Lon received proper notice of the trial setting unless the record rebuts this presumption. *See Wilson*, 689 S.W.2d at 497.

The transcript contains two scheduling orders. The first one was dated March 27, 1995, and set trial for October 9, 1995. At the bottom of the first scheduling order was Lon's attorney's name and address. Lon did not dispute that his attorney received this scheduling order. It is clear from these dates that Lon had a minimum of 45 days notice of the first trial setting, and therefore, rule 245 was satisfied.

The second scheduling order was dated October 16, 1995, and set trial for January 8, 1996. Attached to that scheduling order was a sheet which contained information regarding the trial court's case scheduling procedures, including the procedure for sending the scheduling order to the parties of record. This scheduling sheet contains Sara's attorney's name and address and states that Lon's address is in the court's file.

The third notice of trial was the one delivered to Lon's house, and it reset the January 8th trial setting to January 11th. At the trial court's instruction, Sara's attorney had a notice of the January 11th trial date sent to Lon's house. According to the delivery service memorandum, the letter was attached to the door when nobody answered.

At the hearing on the motion for new trial, when Lon was asked about receiving notice of the trial setting, Lon seemed to avoid making direct answers. Lon's testimony about receiving notice is reproduced below:

Q (by his attorney): Mr. Osborn, did you receive actual written notice of the fact that your divorce was to be heard just previous to January 17th of '96?

A (by Lon): Not to be best of my knowledge, no sir.

Q: Where did you reside at that time?

A: 1855 Witte Road, Houston.

. . . . .

Q: Had you had notice of the hearing, would you have appeared, Mr. Osborn?

A: I have appeared at every other Court time on everything else. I don't know why this would be any different.

Lon's attorney: Pass the witness.

Q (by Sara's lawyer): Did you receive [the October 16, 1995] trial scheduling order?

A: If I did, I don't know where it is.

Q: All right. Did you receive the notice that was delivered to your home prior to the time of the trial date?

A: To the best of my memory, no.

. . . . .

Q: Isn't it a fact that you do not accept any of the certified mail that I send you, do you?

A: I don't know what mail that you have sent me that is certified so that I cannot say what the time was that certified mail was sent because most people normally send something in the regular mail at the same time.

Q: Do you normally not pick up your certified mail?

A: No.

Q: And is there any particular reason why you don't pick up certified mail?

A: There are times that I have not picked up the certified mail because people normally send you something in the regular mail along with certified mail and I see that it's the same person and I haven't—I don't need to spend the extra gas money to drive to the post office all the time to pick it up.

. . . . .

Q: Have you gotten a trial setting from this court or from me?

Lon's attorney: Objection; asked and answered.

Court: Sustained.

Lon had every opportunity at the hearing to offer testimony that (1) he did not receive notice of the trial setting, (2) he did not know about the trial setting, and (3) he would have attended the hearing if he had known about the trial setting. When asked if he did receive the trial scheduling order, he avoided answering by saying if he got it, he did not know where it was. When he was asked if he would have attended if he had received notice of the trial setting, instead of a simple "yes," he said that he had attended every other hearing, and that he did not know why the trial setting would be any different. Lon's lawyer never asked Lon if he had actual or constructive knowledge about the date for the trial.

■ We find that Lon did not meet the requirements under *Lopez*, to show his failure to attend trial was not intentional or the result of his conscious indifference, but was due to an accident or mistake. *Lopez*, 757 S.W.2d at 723. Therefore, the trial court did not abuse its discretion in overruling the motion for new trial.

We overrule points of error one through four.

### Division of Recovery from Lawsuit

In point of error five, Lon argues that the evidence is legally and factually insufficient to rebut the statutory characterization of the potential recovery of Lon's personal injury lawsuit as his separate property. During trial, Sara testified Lon was injured in 1992, and the two of them filed a personal injury action.[4] At the time of the divorce, the personal injury lawsuit had not yet been tried and had not settled. The trial court found the claim arising from the personal injury lawsuit was community property.

4. The case is styled *Lon Osborn and wife, Sara Osborn v. Dr. Howard Cotler, M.D., et al.* Sara filed the lawsuit for loss of consortium.

5. The trial court made a finding and conclusions on the issue of the personal injury lawsuit. In finding of fact 12(j), the trial court characterized the personal injury lawsuit as community property. In conclusion of law 10, the trial court stated that no evidence was presented to establish that Lon had any separate property. In conclusion of

The trial court did not file findings of fact and conclusions of law after the divorce trial; the only findings the court filed were those filed after the motion for new trial hearing. Under this point of error, Lon complains about the sufficiency of the evidence to support the finding made by the trial court that characterized his personal injury lawsuit as community property.[5] The only issue under this point is a legal issue—whether the trial court erred in characterizing all the damages in Lon's personal injury suit as community property. If the trial court mischaracterized Lon's separate property as community property, the error is one of law and is of constitutional dimensions. *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140 (Tex.1977). We review the evidence from the divorce trial to see if there was any evidence that somehow transformed Lon's personal injury recovery into community property.

The only evidence at the divorce trial regarding the personal injury lawsuit was from Sara. She testified that Lon had been injured during the marriage and a lawsuit was filed in both of their names. Although Sara did not introduce the petition from the personal injury suit, from her testimony it is clear the lawsuit requested the following types of damages: for Lon's personal injury, for Lon's lost wages, for Sara's claim for loss of consortium, and for medical costs and other expenses. Sara testified that the personal injury lawsuit had not been settled.

■ In a divorce proceeding, the trial court must order a division of the estate of the parties in a manner it deems just and right. Tex. Fam.Code § 3.63 (1993). In making that division, the trial court has great discretion in dividing property to attain a fair and just result. *Leighton v. Leighton*, 921 S.W.2d 365, 368 (Tex.App.—Houston [1st Dist.] 1996, no writ). Only community prop-

law 11, the court held that all property other than that listed as separate property, was community property. An appellate court is not bound by the trial court's conclusions of law. *Connelly v. Paul*, 731 S.W.2d 657, 661 (Tex. App.—Houston [1st Dist.] 1987, no writ.). An appellate court is free to draw its own conclusions about the law. *Austin Hardwoods, Inc. v. Vanden Berghe*, 917 S.W.2d 320, 322 (Tex.App.—El Paso 1995, no writ).

erty is subject to the trial court's "just and right" division. *Cameron v. Cameron*, 641 S.W.2d 210, 220 (Tex.1982). In making its division, the trial court may not divest one party of his separate property. *Id.*

As a general rule, property possessed by either spouse during or on dissolution of marriage is presumed to be community property, and clear and convincing evidence is required to establish that such property is separate property. TEX. FAM.CODE § 5.02 (1993). To overcome the presumption of community property, the spouse claiming certain property as separate property must trace and clearly identify the property claimed to be separate. *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex.1975); *McElwee v. McElwee*, 911 S.W.2d 182, 189 (Tex.App.—Houston [1st Dist.] 1995, writ denied).

There is no presumption that a potential recovery for a personal injuries to the body of a spouse is community property. A recovery for personal injuries to the body of a spouse is separate property of that spouse. *Graham v. Franco*, 488 S.W.2d 390, 396 (Tex.1972). Section 5.01 of the Family Code provides that the recovery for personal injuries sustained by a spouse during marriage (except any recovery for loss of earning capacity during marriage) is separate property. TEX. FAM.CODE § 5.01(a)(3). The damages that are the separate property of the injured spouse include those for disfigurement and for physical pain and suffering in the past and in the future. *Graham*, 488 S.W.2d at 396.

To the extent the marital partnership was injured, the community estate is entitled to recover damages. *Id.* The damages that belong to the community estate include lost wages of the injured spouse, damages for medical expenses, and other expenses associated with the injury to the community estate. *Id.; Huls v. Huls*, 616 S.W.2d 312, 315–16 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). To the extent the

other spouse was injured by loss of consortium, those damages are the separate property of the other spouse. *Whittlesey v. Miller*, 572 S.W.2d 665, 669 (Tex.1978); *see also Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 740 (Tex.1981).

The trial court may not characterize separate property as community property. *Leighton*, 921 S.W.2d at 368; *Eggemeyer*, 554 S.W.2d at 140. When a court mischaracterizes separate property as community property, the error requires reversal because a spouse is divested of separate property. *Eggemeyer*, 554 S.W.2d at 140; *Leighton*, 921 S.W.2d at 368; *McElwee*, 911 S.W.2d at 189. If the mischaracterized property has value that would have affected the trial court's just and right division, then the mischaracterization is harmful and requires the appellate court to remand the entire community estate to the trial court for a just and right division of the properly characterized community property. *McElwee*, 911 S.W.2d at 189.

Sara argues that Lon had the burden at the trial to show how much of the recovery would be separate property and how much would be community property.[6] We disagree. The issue is decided by the trial court as a matter of law and has nothing to do with a presumption or a burden of proof. Because section 5.01 states that a spouse's recovery for a personal injuries to the spouse's body is separate property, Lon was not required to prove that. TEX. FAM. CODE § 5.01(a)(3).

Sara seems to complain that Lon did not inform her about the dollar value of damages he claimed for each type of injury. Lon's opinion regarding the amount of damages he claimed would not resolve the issue of what part of the recovery would be separate property and what part community property. Any estimate by Lon separating the dollar amount or percentage of recovery for injury to his body from the injury to the community

---

6. In support of her argument, Sara cites cases in which a spouse received a lump sum award after settlement or trial for a personal injury suffered during the marriage. In those cases, the spouse was required to carry the burden to prove what

part of the award was separate property. *See Moreno v. Alejandro*, 775 S.W.2d 735, 738 (Tex. App.—San Antonio 1989, writ denied). However, in this case there has been no lump sum award either by settlement or trial.

and injury to Sara (for her loss of consortium) would be entirely speculative. Once the case is tried, the jury's answers will determine the amounts to be awarded for each type of injury. If the case is settled, Sara, as one of the plaintiffs, can participate in the allocation of damages to the different claims for damages.

We find the trial court erred in characterizing the recovery for Lon's personal injury lawsuit as community property. We sustain point of error five.[7]

On remand, the trial court is required to properly characterize the damages sought by the personal injury lawsuit. The damages for Lon's personal injury are his separate property; the damages for Sara's claim for loss of consortium are her separate property; the damages for Lon's lost wages, medical costs, and other expenses are community property. Because we cannot determine if the mischaracterization affected the trial court's just and right division, we remand the entire community estate for a just and right division based on properly characterized property.

We reverse that portion of the judgment dividing the property and remand this cause to the trial court for a new division of property. We affirm the remaining portions of the judgment.

---

7. Because of our disposition of point of error five, we need not reach point of error six, in which Lon argues the trial court abused its discretion in awarding Sara 30% of Lon's recovery.