NO. 07-04-0515-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JUNE 19, 2006



______________________________


 

IN THE MATTER OF THE MARRIAGE OF


TAMELA JO FRANKLIN AND ROBERT EARL FRANKLIN


AND IN THE INTEREST OF M.C.F., A CHILD


_________________________________



FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;



NO. 03-12-19404; HONORABLE HOWARD PHELAN, JUDGE


_______________________________




Before REAVIS and CAMPBELL, JJ., and BOYD, S.J. (1)

MEMORANDUM OPINION


 This appeal concerns the characterization of an annuity issued as part of a
settlement of a spouse's personal injury suit during marriage. The trial court determined
the annuity was community property subject to division at divorce. We affirm.

 Most of the relevant facts in this case are undisputed. Tamela Jo and Robert Earl
Franklin were married in 1979. They had two children, one of whom had turned 18 before
the divorce. Robert had a stable job as a welder making $26,250 a year. Tamela was
employed as a nurse earning a similar amount. In 1997 Robert suffered a serious heart
condition necessitating valve replacement surgery and ongoing care. Robert's heart
problems were attributed to his use of the drug combination fen/phen, and as one of
twenty-nine plaintiffs he brought a personal injury suit in 1999. Tamela was not a party to
the suit. A petition in the personal injury suit was introduced in the divorce proceeding. It
sought recovery for past and future physical pain and mental anguish, disfigurement and
medical expenses. 

 Robert's suit was terminated by a settlement agreement about August 2000. Parts
of the settlement agreement also appear in the record. In exchange for his release of all
his current and future claims Robert received an initial payment of $523,203.43 and
periodic payments through an annuity issued by American General Assignment
Corporation. The annuity provided for guaranteed monthly payments of $5000 for five
years, increasing to $7838 for Robert's lifetime but for twenty-five years certain, six
additional payments ranging between $20,000 and $250,000, and semiannual payments
of $10,000 and $12,500 for the benefit of the parties' children through their college-age
years. (2) 

 The couple separated in November 2003 and Tamela filed a petition for divorce the
following month. The case was tried without a jury in June 2004 where Tamela and Robert
were the only witnesses. Their testimony focused on three main areas: the grounds for
divorce, (3) the personal injury suit, and disposition of the settlement proceeds.

 The evidence of Robert's income, injuries and total disability recited above was
undisputed. Tamela testified she had taken a job with lower pay because it would provide
health insurance for Robert and allow her to spend more time caring for him and the
children. She also testified to her participation in the settlement discussions in the
personal injury case and her belief that the recovery was to compensate them jointly. 
Robert testified to his belief the settlement was for his claims only. 

 The evidence concerning disposition of the settlement funds showed the couple had
no significant assets before the settlement. They had little or no equity in their house and
insubstantial personal property. The initial payment was placed in a joint money market
account at a bank. Monthly annuity payments were placed in another joint account in the
same bank. Funds from both accounts were used to purchase, remodel and furnish a
home, pay off debts, and purchase vehicles for members of the family. They were also
used to pay living and medical expenses. Tamela testified that she believed all of Robert's
medical bills from his heart condition through the time of trial had been paid. Robert
testified all but "about $2,000" of his medical expenses had been paid out of the settlement
proceeds. 

 The trial court rendered judgment terminating the marriage and naming Tamela
managing conservator of the minor child. The trial court found the annuity was community
property because it consisted of commingled funds and Robert failed to identify it as his
separate property by clear and convincing evidence. The decree awarded to Tamela the
home, personal property in her possession, and forty percent of the annuity. It awarded
Robert vehicles and personal property in his possession and sixty percent of the annuity. (4) 
The trial court rendered findings of fact and conclusions of law supporting its decree. 

 Robert's two issues on appeal challenge the trial court's characterization of the
annuity as community property and its imposition on him of the burden to establish the
annuity as his separate property. We initially address the second issue. 

 Robert agrees we must begin with the presumption that property possessed by
either spouse on dissolution of marriage is community property. Tex. Fam. Code Ann. 
§ 3.003(a) (Vernon 1998). It is well established that a vested right to future payments can
be community property subject to division. See Shanks v. Treadway, 110 S.W.3d 444, 446
(Tex. 2003) (pension plan); Cearley v. Cearley, 544 S.W.2d 661, 662 (Tex. 1976) (same). 
To overcome the presumption of community property, a spouse must identify his separate
property by clear and convincing evidence, by tracing if necessary. Tex. Fam. Code Ann.
§ 3.003(b); Tarver v. Tarver, 394 S.W.2d 780, 783 (Tex. 1965); Licata v. Licata, 11 S.W.3d
269, 272-73 (Tex.App.--Houston [14th Dist.] 1999, pet. denied). Clear and convincing is
the degree of evidence necessary to "produce in the mind of the trier of fact a firm belief
or conviction about the allegations sought to be established." Tarver, 394 S.W.2d at 783. 

 A spouse's separate property consists of property (1) owned before marriage, (2)
acquired during marriage by gift, devise or descent, and (3) "the recovery for personal
injuries sustained by the spouse during marriage, except for any loss of earning capacity
during marriage." Tex. Fam. Code Ann. § 3.001 (Vernon 1998). When the property
consists of recovery for personal injuries, courts have recognized a second exception
applicable to amounts recovered for medical expenses. Graham v. Franco, 488 S.W.2d
390, 396 (Tex. 1972); Licata, 11 S.W.3d at 273. 

 Robert's second issue turns on differing views of Family Code section 3.001(3). As 
we perceive Robert's position, he believes that statute required him only to show the
property at issue consisted of a recovery for personal injuries. On meeting that burden, the
burden to show what portion of the recovery was for lost earning capacity or medical
expenses shifted to Tamela. Tamela contends section 3.001(3) required Robert to bear
the burden to identify what amount of the recovery was for his pain and suffering and what
amount was for lost earning capacity during marriage and medical expenses. 

 Robert correctly cites Osborn v. Osborn, 961 S.W.2d 408 (Tex.App.-Houston [1st
Dist.] 1997, pet. denied), for the proposition that no presumption of community property
applies to a potential recovery for personal injuries. Osborn, though, dealt with a potential
recovery. Id. at 414. At the time of the Osborn parties' divorce, their personal injury
lawsuit had not been tried or settled. Id. at 413. En route to its holding that the trial court
erred by treating the entirety of the claims asserted in their personal injury suit as
community property, the court noted that the husband Lon Osborn's potential recovery for
his personal injuries was his separate property under both the Family Code and case law
(citing Graham v. Franco, 488 S.W.2d at 396), noted that other potential recoveries
(medical expenses, e.g.) in the parties' suit would constitute community property and finally
noted that Sara Osborn's claim for damages for loss of consortium was her separate 
property. Id. at 414. The court further observed that until the case was tried or settled, the
parties' estimates of the dollar amounts or percentages of the recovery attributable to the
various claims would be entirely speculative. Id. at 415. It concluded, "Once the case is
tried, the jury's answers will determine the amounts to be awarded for each type of injury. 
If the case is settled, Sara, as one of the plaintiffs, can participate in the allocation of
damages to the different claims for damages." Id. 

 Osborn is not inconsistent with other case law establishing that a spouse who claims
property as separate under section 3.001(3) bears the burden to establish its separate
character in the same manner as that claimed as separate under sections 3.001(1) or (2). 
See Cottone v. Cottone, 122 S.W.3d 211, 213 (Tex.App.--Houston [1st Dist.] 2003, no
pet.); Licata, 11 S.W.3d at 272; Slaton v. Slaton, 987 S.W.2d 180, 183 (Tex.App.-Houston
[14th Dist.] 1999, pet. denied); Kyles v. Kyles, 832 S.W.2d 194, 199 (Tex.App.-Beaumont
1992, no writ) (all applying presumption of community property to personal injury
recoveries). Unlike the potential recovery in Osborn, we deal here with an asset acquired
during marriage from the settlement of a lawsuit in which both Robert's separate property
claims and community property claims were asserted and settled. The trial court here
properly placed on Robert the burden to show that the annuity he claimed as separate
property was obtained as a result of his personal injuries and was not compensation for
lost earning capacity during marriage or medical expenses. We overrule Robert's second
issue.

 In his first issue, Robert argues the trial court erred in characterizing the annuity
resulting from the settlement agreement as community property. Courts are barred by our
state constitution from divesting a spouse of separate property when dividing their property
on divorce. Eggemeyer v. Eggemeyer, 554 S.W.2d 137, 139-42 (Tex. 1977). 

 Courts have recognized more than one method by which a party can trace and
identify the amounts of a personal injury recovery belonging to the community and
separate estates. See Dale Joseph Gilsinger, Annotation, Spouse's Cause of Action for
Negligent Personal Injury, or Proceeds Therefrom as Separate or Community Property, 80
A.L.R.5th 533 (2000). If the recovery is obtained through a settlement and the settlement
agreement allocates amounts to specific elements of damages, those allocations may be
sufficient to overcome the community property presumption. Licata, 11 S.W.3d at 274.
The same rationale is applicable to allocations established by jury answers or findings of
fact supporting a judgment. See Osborn, 961 S.W.2d at 415. The parties in a divorce
proceeding can also stipulate the amounts of a personal injury settlement attributable to
various elements of damages. See Slaton, 987 S.W.2d at 183 n.1. In Slaton the parties
stipulated what portions of a personal injury settlement were recovery for damages to the
community estate. The spouses then presented evidence of their individual damages
resulting from the personal injury to determine the recovery belonging to their separate
estates. Id. 

 It is clear that the annuity in dispute here was issued as recovery for Robert's
personal injuries. The parties here also agree the settlement included recovery for loss of
earning capacity and medical expenses. Robert does not contend that language in the
settlement documents addresses the allocation of the settlement among the damage
claims he asserted. Nonetheless, pointing to the presumption that community funds are
withdrawn first from a commingled fund, (5) Robert argues "the evidence reflects,
conclusively, that all community interest in the fund was withdrawn and expended prior to
the divorce proceeding," so the remainder of the annuity is part of his separate estate. 

 To identify the community interest in the settlement fund, Robert relies on the
testimony that all his actual medical expenses incurred during the marriage had been paid. 
That evidence may permit an inference of the value of the past and future medical expense
damages that Robert sought in his petition in the personal injury suit. But that evidence
says little or nothing about the amount, or the proportion of the total settlement, for which
the medical expense claim was settled. See Gleich v. Bongio, 99 S.W.2d 881, 883 (Tex.
1937) (ownership of marital property proportionate to consideration supplied by separate
and community estates). 

 Although Tamela does not challenge Robert's calculation of the value of his claim
for damages for loss of earning capacity during the marriage, his argument concerning the
community interest in the recovery resulting from settlement of that claim suffers from the
same weakness. The value Robert placed on the claim at trial of his divorce does not
demonstrate the amount for which he settled it some four years before.

 The record does not reflect clear and convincing evidence of the allocation of
Robert's settlement among the various elements of damages he asserted. The trial court
did not err in finding that Robert did not overcome the presumption that the remaining
payments due under the annuity were community property. We overrule his first issue and
affirm the judgment of the trial court.


 James T. Campbell

 Justice






1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. 
2. The trial court's findings of fact state that the annuity carried minimum guaranteed
payments of $3,141,400. The settlement agreement and annuity provided for Robert's
designation of a beneficiary for the guaranteed payments in the event of his death before
their completion. 
3. The divorce decree dissolved the marriage on the ground of adultery. Robert
acknowledged he had fathered two children by another woman during the marriage.
4. The semiannual annuity payments designated for the benefit of their children were
excepted. Tamela was given control over the payments designated for one of the children,
and Robert given control over those for the other child.
5. Under that presumption, when an account includes both separate and community
funds, we presume the separate funds "sink to the bottom" and that community funds are
withdrawn first. Hill v. Hill, 971 S.W.2d 153, 158 (Tex.App.-Amarillo 1998, no pet.). 
Where the balance did not fall below the amount shown as separate, the spouse has
adequately identified the remaining funds as separate property. Smith v. Smith, 22 S.W.3d
140, 146 (Tex.App.-Houston [14th Dist.] 2000, no pet.); Sibley v. Sibley, 286 S.W.2d 657,
659 (Tex.Civ.App.--Dallas 1955, writ dism'd w.o.j.). We express no opinion on the
application of the community-out-first presumption on these facts.