NO. 07-04-0515-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JUNE 19, 2006

_____

IN THE MATTER OF THE MARRIAGE OF
TAMELA JO FRANKLIN AND ROBERT EARL FRANKLIN
AND IN THE INTEREST OF M.C.F., A CHILD
_____

FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

NO. 03-12-19404; HONORABLE HOWARD PHELAN, JUDGE
_____

Before REAVIS and CAMPBELL, JJ., and BOYD, S.J.[1]

**MEMORANDUM OPINION**

This appeal concerns the characterization of an annuity issued as part of a settlement of a spouse's personal injury suit during marriage. The trial court determined the annuity was community property subject to division at divorce. We affirm.

Most of the relevant facts in this case are undisputed. Tamela Jo and Robert Earl Franklin were married in 1979. They had two children, one of whom had turned 18 before the divorce. Robert had a stable job as a welder making $26,250 a year. Tamela was

---

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

employed as a nurse earning a similar amount. In 1997 Robert suffered a serious heart condition necessitating valve replacement surgery and ongoing care. Robert's heart problems were attributed to his use of the drug combination fen/phen, and as one of twenty-nine plaintiffs he brought a personal injury suit in 1999. Tamela was not a party to the suit. A petition in the personal injury suit was introduced in the divorce proceeding. It sought recovery for past and future physical pain and mental anguish, disfigurement and medical expenses.

Robert's suit was terminated by a settlement agreement about August 2000. Parts of the settlement agreement also appear in the record. In exchange for his release of all his current and future claims Robert received an initial payment of $523,203.43 and periodic payments through an annuity issued by American General Assignment Corporation. The annuity provided for guaranteed monthly payments of $5000 for five years, increasing to $7838 for Robert's lifetime but for twenty-five years certain, six additional payments ranging between $20,000 and $250,000, and semiannual payments of $10,000 and $12,500 for the benefit of the parties' children through their college-age years.[2]

The couple separated in November 2003 and Tamela filed a petition for divorce the following month. The case was tried without a jury in June 2004 where Tamela and Robert

---

[2] The trial court's findings of fact state that the annuity carried minimum guaranteed payments of $3,141,400. The settlement agreement and annuity provided for Robert's designation of a beneficiary for the guaranteed payments in the event of his death before their completion.

were the only witnesses. Their testimony focused on three main areas: the grounds for divorce,[3] the personal injury suit, and disposition of the settlement proceeds.

The evidence of Robert's income, injuries and total disability recited above was undisputed. Tamela testified she had taken a job with lower pay because it would provide health insurance for Robert and allow her to spend more time caring for him and the children. She also testified to her participation in the settlement discussions in the personal injury case and her belief that the recovery was to compensate them jointly. Robert testified to his belief the settlement was for his claims only.

The evidence concerning disposition of the settlement funds showed the couple had no significant assets before the settlement. They had little or no equity in their house and insubstantial personal property. The initial payment was placed in a joint money market account at a bank. Monthly annuity payments were placed in another joint account in the same bank. Funds from both accounts were used to purchase, remodel and furnish a home, pay off debts, and purchase vehicles for members of the family. They were also used to pay living and medical expenses. Tamela testified that she believed all of Robert's medical bills from his heart condition through the time of trial had been paid. Robert testified all but "about $2,000" of his medical expenses had been paid out of the settlement proceeds.

---

[3] The divorce decree dissolved the marriage on the ground of adultery. Robert acknowledged he had fathered two children by another woman during the marriage.

The trial court rendered judgment terminating the marriage and naming Tamela managing conservator of the minor child. The trial court found the annuity was community property because it consisted of commingled funds and Robert failed to identify it as his separate property by clear and convincing evidence. The decree awarded to Tamela the home, personal property in her possession, and forty percent of the annuity. It awarded Robert vehicles and personal property in his possession and sixty percent of the annuity.[4] The trial court rendered findings of fact and conclusions of law supporting its decree.

Robert's two issues on appeal challenge the trial court's characterization of the annuity as community property and its imposition on him of the burden to establish the annuity as his separate property. We initially address the second issue.

Robert agrees we must begin with the presumption that property possessed by either spouse on dissolution of marriage is community property. Tex. Fam. Code Ann. § 3.003(a) (Vernon 1998). It is well established that a vested right to future payments can be community property subject to division. *See Shanks v. Treadway*, 110 S.W.3d 444, 446 (Tex. 2003) (pension plan); *Cearley v. Cearley*, 544 S.W.2d 661, 662 (Tex. 1976) (same). To overcome the presumption of community property, a spouse must identify his separate property by clear and convincing evidence, by tracing if necessary. Tex. Fam. Code Ann. § 3.003(b); *Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex. 1965); *Licata v. Licata*, 11 S.W.3d 269, 272-73 (Tex.App.--Houston [14th Dist.] 1999, pet. denied). Clear and convincing is

---

[4] The semiannual annuity payments designated for the benefit of their children were excepted. Tamela was given control over the payments designated for one of the children, and Robert given control over those for the other child.

4

the degree of evidence necessary to "produce in the mind of the trier of fact a firm belief or conviction about the allegations sought to be established." *Tarver*, 394 S.W.2d at 783.

A spouse's separate property consists of property (1) owned before marriage, (2) acquired during marriage by gift, devise or descent, and (3) "the recovery for personal injuries sustained by the spouse during marriage, except for any loss of earning capacity during marriage." Tex. Fam. Code Ann. § 3.001 (Vernon 1998). When the property consists of recovery for personal injuries, courts have recognized a second exception applicable to amounts recovered for medical expenses. *Graham v. Franco*, 488 S.W.2d 390, 396 (Tex. 1972); *Licata*, 11 S.W.3d at 273.

Robert's second issue turns on differing views of Family Code section 3.001(3). As we perceive Robert's position, he believes that statute required him only to show the property at issue consisted of a recovery for personal injuries. On meeting that burden, the burden to show what portion of the recovery was for lost earning capacity or medical expenses shifted to Tamela. Tamela contends section 3.001(3) required Robert to bear the burden to identify what amount of the recovery was for his pain and suffering and what amount was for lost earning capacity during marriage and medical expenses.

Robert correctly cites *Osborn v. Osborn,* 961 S.W.2d 408 (Tex.App.–Houston [1st Dist.] 1997, pet. denied), for the proposition that no presumption of community property applies to a potential recovery for personal injuries. *Osborn*, though, dealt with a *potential* recovery. *Id.* at 414. At the time of the Osborn parties' divorce, their personal injury lawsuit had not been tried or settled. *Id*. at 413. En route to its holding that the trial court

5

erred by treating the entirety of the claims asserted in their personal injury suit as community property, the court noted that the husband Lon Osborn's potential recovery for his personal injuries was his separate property under both the Family Code and case law (citing *Graham v. Franco*, 488 S.W.2d at 396), noted that other potential recoveries (medical expenses, *e.g.*) in the parties' suit would constitute community property and finally noted that Sara Osborn's claim for damages for loss of consortium was her separate property. *Id*. at 414. The court further observed that until the case was tried or settled, the parties' estimates of the dollar amounts or percentages of the recovery attributable to the various claims would be entirely speculative. *Id*. at 415. It concluded, "Once the case is tried, the jury's answers will determine the amounts to be awarded for each type of injury. If the case is settled, Sara, as one of the plaintiffs, can participate in the allocation of damages to the different claims for damages." *Id*.

*Osborn* is not inconsistent with other case law establishing that a spouse who claims property as separate under section 3.001(3) bears the burden to establish its separate character in the same manner as that claimed as separate under sections 3.001(1) or (2). *See Cottone v. Cottone*, 122 S.W.3d 211, 213 (Tex.App.--Houston [1st Dist.] 2003, no pet.); *Licata*, 11 S.W.3d at 272; *Slaton v. Slaton*, 987 S.W.2d 180, 183 (Tex.App.–Houston [14th Dist.] 1999, pet. denied); *Kyles v. Kyles*, 832 S.W.2d 194, 199 (Tex.App.–Beaumont 1992, no writ) (all applying presumption of community property to personal injury recoveries). Unlike the potential recovery in *Osborn*, we deal here with an asset acquired during marriage from the settlement of a lawsuit in which both Robert's separate property claims and community property claims were asserted and settled. The trial court here

properly placed on Robert the burden to show that the annuity he claimed as separate property was obtained as a result of his personal injuries and was not compensation for lost earning capacity during marriage or medical expenses. We overrule Robert's second issue.

In his first issue, Robert argues the trial court erred in characterizing the annuity resulting from the settlement agreement as community property. Courts are barred by our state constitution from divesting a spouse of separate property when dividing their property on divorce. *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139-42 (Tex. 1977).

Courts have recognized more than one method by which a party can trace and identify the amounts of a personal injury recovery belonging to the community and separate estates. *See* Dale Joseph Gilsinger, Annotation, *Spouse's Cause of Action for Negligent Personal Injury, or Proceeds Therefrom as Separate or Community Property*, 80 A.L.R.5th 533 (2000). If the recovery is obtained through a settlement and the settlement agreement allocates amounts to specific elements of damages, those allocations may be sufficient to overcome the community property presumption. *Licata*, 11 S.W.3d at 274. The same rationale is applicable to allocations established by jury answers or findings of fact supporting a judgment. *See Osborn*, 961 S.W.2d at 415. The parties in a divorce proceeding can also stipulate the amounts of a personal injury settlement attributable to various elements of damages. See *Slaton*, 987 S.W.2d at 183 n.1. In *Slaton* the parties stipulated what portions of a personal injury settlement were recovery for damages to the community estate. The spouses then presented evidence of their individual damages

7

resulting from the personal injury to determine the recovery belonging to their separate estates. *Id.*

It is clear that the annuity in dispute here was issued as recovery for Robert's personal injuries. The parties here also agree the settlement included recovery for loss of earning capacity and medical expenses. Robert does not contend that language in the settlement documents addresses the allocation of the settlement among the damage claims he asserted. Nonetheless, pointing to the presumption that community funds are withdrawn first from a commingled fund,[5] Robert argues "the evidence reflects, conclusively, that all community interest in the fund was withdrawn and expended prior to the divorce proceeding," so the remainder of the annuity is part of his separate estate.

To identify the community interest in the settlement fund, Robert relies on the testimony that all his actual medical expenses incurred during the marriage had been paid. That evidence may permit an inference of the value of the past and future medical expense damages that Robert sought in his petition in the personal injury suit. But that evidence says little or nothing about the amount, or the proportion of the total settlement, for which the medical expense claim was settled. *See Gleich v. Bongio*, 99 S.W.2d 881, 883 (Tex.

---

[5] Under that presumption, when an account includes both separate and community funds, we presume the separate funds "sink to the bottom" and that community funds are withdrawn first. *Hill v. Hill*, 971 S.W.2d 153, 158 (Tex.App.–Amarillo 1998, no pet.). Where the balance did not fall below the amount shown as separate, the spouse has adequately identified the remaining funds as separate property. *Smith v. Smith*, 22 S.W.3d 140, 146 (Tex.App.–Houston [14th Dist.] 2000, no pet.); *Sibley v. Sibley*, 286 S.W.2d 657, 659 (Tex.Civ.App.--Dallas 1955, writ dism'd w.o.j.). We express no opinion on the application of the community-out-first presumption on these facts.

8

1937) (ownership of marital property proportionate to consideration supplied by separate and community estates).

Although Tamela does not challenge Robert's calculation of the value of his claim for damages for loss of earning capacity during the marriage, his argument concerning the community interest in the recovery resulting from settlement of that claim suffers from the same weakness. The value Robert placed on the claim at trial of his divorce does not demonstrate the amount for which he settled it some four years before.

The record does not reflect clear and convincing evidence of the allocation of Robert's settlement among the various elements of damages he asserted. The trial court did not err in finding that Robert did not overcome the presumption that the remaining payments due under the annuity were community property. We overrule his first issue and affirm the judgment of the trial court.


James T. Campbell
Justice

9