Opinion issued March 3, 2011

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-01029-CV

———————————

Dierdre Rosensky, Appellant

V.

Douglas
Steven Rosensky,
Appellee



 



 

On Appeal from the 306th District Court

Galveston County, Texas



Trial Court Case No. 08FD1973

 



 

MEMORANDUM OPINION

          Appellant,
Dierdre Rosensky (“Dierdre”), appeals from a final decree of divorce from
Douglas Steven Rosensky (“Douglas”).  In
the decree, the trial court determined that the Rosenskys’ marital residence
was community property and ordered the property to be sold and the proceeds to
be divided between Dierdre and Douglas. 
In one issue, Dierdre contends that the trial court erred in not
classifying the residence as her separate property because the $72,000 that she
used for the down payment was a gift from Douglas.

          We
affirm.

Background

          Dierdre
and Douglas married in 2000.  No children
were born during the marriage.  In 2006, the
parties purchased a home in League City for their marital residence.  In her inventory and appraisal filed in the
divorce proceeding, Dierdre listed the house under the section entitled
“Community Estate of the Parties” and noted that the current net equity in the
property, as of May 21, 2009, was $90,978.49, “less the $72,000 that is Dierdre
Rosensky’s separate property . . . .”  In the “Separate Assets of Wife” section of her
inventory, Dierdre stated the following:

Description of asset:      Claim by wife’s separate estate

 

Basis
of Claim:              Douglas Steven
Rosensky gifted to Dierdre Rosensky $72,000 for a down payment on the [League
City] home.

 

How acquired:               Gifted on April 11, 2006.

 

Value:                            $72,000.

 

Douglas, in his inventory and appraisal, listed the
house as community property, noted that title to the property was in the name
of “Doug and Dierdre Rosensky,” and did not assert that Dierdre had a separate
property interest in the house.

          At
trial, Douglas testified that he wanted the trial court to order the house to
be sold and the proceeds to be divided between Dierdre and him, and he asserted
that, if she wished to continue living there, she could buy out his interest in
the property.  Douglas stated that he did
not give Dierdre $72,000 for the down payment on the house.  Douglas testified that he wired the money for
the down payment directly to the title company approximately two days before
the closing.  He noted that he did not
have any direct dealings with either the title company or the mortgage company
and that Dierdre, who is a real estate agent, handled the transaction on their
behalf.  He stated that, at the closing,
he was given a stack of documents to sign and no one explained the documents to
him before he signed.

          Douglas
reiterated several times that he did not believe that he was making a gift to
Dierdre when he wired the money and that he did not intend to make a gift to
Dierdre.  When asked to explain his
intent in wiring the $72,000 to the title company, he stated that he received
the money through a stock sale, that Dierdre told him to make the down payment
for the house, and that he wire-transferred the money to do so.  Douglas understood that the house was to be for
both Dierdre and him, and he noted that the deed for the property listed both
Dierdre and himself as grantees.  The
trial court admitted the deed, which reflects a conveyance to both Douglas and
Dierdre and does not indicate that a portion of the consideration was to be
paid with Dierdre’s separate property.  Douglas
did not believe that the house was a gift to Dierdre—rather, he believed that he was transferring
the money “to put a down payment for a married couple’s house.”

          Douglas
further testified that after Dierdre placed their bid on the house she went to
the mortgage company and gave the company both of their social security
numbers.  She then informed Douglas that
because of his previous bankruptcy his credit score was low, which would make
it more difficult to get a mortgage on favorable terms.  Dierdre recommended placing the mortgage in
her name alone, because with her “great credit score,” they could hopefully
obtain a much better interest rate.  Douglas
testified that they paid a large down payment in an additional effort to obtain
a low interest rate and to keep their monthly mortgage payments low.  Douglas further testified that, if he had
intended to give the $72,000 to Dierdre a gift, he would have written her a
check from his checking account.

The trial court admitted a document
entitled “gift letter,” dated April 11, 2006, two days before the closing, which
stated the following:

I, Douglas S.
Rosensky . . . do hereby certify that I have given a gift
of $72,000 to my wife to be applied toward the purchase of the [League City] property. . . . I
further certify that repayment is not expected or implied on this gift either
in the form of cash or future services.

 

The document contained a signature by the donor,
which Douglas confirmed “look[ed] like” his signature.  He testified, however, that he did not
remember signing the document and that he “never knew that [he] signed that
letter.”  Douglas stated that the first
time that he saw the gift letter was at his deposition for the divorce, and he
opined that the only way that he could have signed the document was if it had
been placed in the stack of documents awaiting his signature at the
closing.  When asked about the differing
dates on the gift letter and the deed, dated April 13, 2006, Douglas stated
that, although he did not remember signing the gift letter, he knew that he did
not sign it a few days before the closing and therefore the gift letter was
misdated.

          Dierdre
testified that Douglas signed the gift letter on April 11, 2006, two days
before the Rosenskys closed on the League City house.  Dierdre stated that the gift letter could not
have been signed at closing because they needed the document to get approved
for the mortgage, which had to occur prior to closing.  She testified that she never intended for the
$72,000 “to be anything other than a gift from [Douglas.]”  She testified that she had a conversation
with Douglas about the $72,000 and that he was aware that the money was to be
used for the down payment.  Dierdre
stated that she intended to remain living in the house, and she was therefore
asking the trial court to award her the $72,000 down payment and possession of
the house.

          On
cross-examination, Dierdre agreed that she handled the “back and forth
transactions and the daily communications” with the title company and that
Douglas was “really not in communication” with the company.  Dierdre stated that Douglas signed the gift
letter at the loan officer’s office at the mortgage company.  She further testified that she and Douglas
chose to put the mortgage solely in her name because Douglas had a prior
bankruptcy.  Dierdre agreed with
Douglas’s counsel that they put the mortgage in her name because (1) they were
afraid that they would not be approved for the loan because of Douglas’s
bankruptcy and (2) they could secure a “much more beneficial interest
rate” with Dierdre as the sole mortgagee. 
Their ultimate goal was to “save as much money [as possible] on the
monthly payments.”

          In
the final divorce decree, the trial court ordered the sale of the League City
house and awarded forty-eight percent of the net proceeds from the sale to
Douglas and fifty-two percent of the net proceeds to Dierdre.  The trial court then issued the following
findings of fact relating to the alleged gift:

a.     The $72,000.00 down payment
that was made on the [League City] house was made from community funds and was
not a gift from Douglas Rosensky to Dierdre Rosensky.

 

b.     Douglas Rosensky did not
have the requisite donative intent to make a gift to Dierdre Rosensky.

 

c.      Douglas Rosensky did not
intend to make a gift to Dierdre Rosensky but intended to make a down payment
on the community residence.

 

The trial court also made the following conclusions
of law:

a.     The gift letter offered by
[Dierdre] is not valid and enforceable.

 

b.     Douglas Rosensky did not
have any . . . intent to make a gift to Dierdre Rosensky.

 

The trial court denied Dierdre’s motion for new
trial and this appeal followed.

Characterization of Property

          In
her sole issue, Dierdre contends that the trial court erroneously characterized
the real property purchased during the marriage as community property because
Douglas gifted the $72,000 for the down payment to Dierdre.

A.              
Standard of Review

We review the trial court’s
characterization of property in a divorce under an abuse of discretion
standard.  Raymond v. Raymond, 190 S.W.3d 77, 80 (Tex. App.—Houston [1st
Dist.] 2005, no pet.) (citing Robles v.
Robles, 965 S.W.2d 605, 613 (Tex. App.—Houston [1st Dist.] 1998, pet.
denied)); Moroch v. Collins, 174 S.W.3d
849, 857 (Tex. App.—Dallas 2005, pet. denied) (citing LaFrensen v. LaFrensen, 106 S.W.3d 876, 878 (Tex. App.—Dallas 2003,
no pet.)).  We determine the issue of
whether property is separate or community in nature by looking to the facts
that, according to rules of law, give character to the property.  Raymond,
190 S.W.3d at 80 (citing McElwee v.
McElwee, 911 S.W.2d 182, 188 (Tex. App.—Houston [1st Dist.] 1995, writ
denied)).  A trial court does not abuse
its discretion if there is “some evidence of a substantive and probative
character” to support the decision.  Moroch, 174 S.W.3d at 857; Raymond, 190 S.W.3d at 80 (“If there is
any evidence to support the finding, the appeals court must uphold the
finding.”).

A trial court’s findings are
reviewable for legal and factual sufficiency by the same standards used in
reviewing the evidence supporting a jury’s verdict.  See
Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); Moroch, 174 S.W.3d at 857. 
In family law cases, however, the abuse of discretion standard overlaps
with the traditional sufficiency of evidence standard of review; as such, legal
and factual sufficiency are not independent grounds of reversible error, but
instead “constitute factors relevant to our assessment of whether the trial
court abused its discretion.”  Moroch, 174 S.W.3d at 857 (citing Boyd v. Boyd, 131 S.W.3d 605, 611 (Tex.
App.—Fort Worth 2004, no pet.)); Mai v.
Mai, 853 S.W.2d 615, 618 (Tex. App.—Houston [1st Dist.] 1993, no writ).  To determine whether the trial court abused
its discretion because legally or factually sufficient evidence does not
support its decision, we must answer two questions:  (1) whether the trial court had sufficient
evidence upon which to exercise its discretion, and (2) whether the trial court
erred in applying its discretion.  Moroch, 174 S.W.3d at 857.  The sufficiency of evidence review “comes
into play with regard to the first question.” 
Id.  We must then determine whether, based on the
evidence presented at trial, the trial court made a reasonable decision.  Id.  To uphold the trial court’s determination, we
must conclude that the decision was neither arbitrary nor unreasonable.  Id.

When the burden of proof at trial
is clear and convincing evidence, as when a party attempts to rebut the
“community presumption,” we apply a higher standard of legal and factual
sufficiency review.  See In re J.F.C., 96 S.W.3d 256, 265–66 (Tex. 2002); In re C.H., 89 S.W.3d 17, 25–26 (Tex.
2002); Moroch, 174 S.W.3d at
857.  Clear and convincing evidence is
defined as “that measure or degree of proof which will produce in the mind of
the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be established.”  Moroch, 174 S.W.3d at 857; see also Tex. Fam. Code Ann. § 101.007 (Vernon 2008).  To meet the clear and convincing burden, the
proof must “weigh more heavily than merely the greater weight of the credible
evidence, but the evidence need not be unequivocal or undisputed.”  Moroch,
174 S.W.3d at 857–58.

B.              
Evidence of Gift

In a divorce, the trial court must
divide the community estate in a “just and right” manner.  See
Tex. Fam. Code Ann. § 7.001
(Vernon 2006).  Only community property
is subject to the trial court’s division.  Jacobs
v. Jacobs, 687 S.W.2d 731, 733 (Tex. 1985) (holding that, while trial court
has “wide discretion” in dividing estate of parties, it must “confine itself to
the community property”); Osborn v.
Osborn, 961 S.W.2d 408, 413–14 (Tex. App.—Houston [1st Dist.] 1997, pet.
denied).  Property possessed by either
spouse during or on dissolution of the marriage is presumed to be community
property.  Tex. Fam. Code Ann. § 3.003(a) (Vernon 2006).  The party asserting that a certain piece of
property is actually separate property must establish the separate character of
the property by clear and convincing evidence. 
Id. § 3.003(b); see also Moroch, 174 S.W.3d at 856 (“The
statutory presumption that property possessed by either spouse upon dissolution
of the marriage is community is a rebuttable presumption and is overcome by
evidence that a specified item of property is the separate property of one
spouse or the other.”).  To satisfy this
burden, the spouse must “trace and clearly identify property claimed as
separate property.”  Moroch, 174 S.W.3d at 856; see
also Cockerham v. Cockerham, 527 S.W.2d 162, 167 (Tex. 1975) (“[T]he party
asserting separate ownership must clearly trace the original separate property
into the particular assets on hand during the marriage.”).  Tracing involves “establishing the separate
origin of the property through evidence showing the time and means by which the
spouse originally obtained possession of the property.”  Moroch,
174 S.W.3d at 856–57 (citing Boyd,
131 S.W.3d at 612).  Any doubt as to the
character of the property should be resolved in favor of the community
estate.  Garza v. Garza, 217 S.W.3d 538, 548 (Tex. App.—San Antonio 2006, no
pet.) (citing Boyd, 131 S.W.3d at
612).

Separate property includes, among
other things, property acquired by gift after marriage.  See
Tex. Const. art. XVI, § 15
(“All property, both real and personal, of a spouse owned or claimed before
marriage, and that acquired afterward by gift, devise or descent, shall be the
separate property of that spouse . . . .”); Tex. Fam. Code Ann. § 3.001(2) (Vernon
2006) (defining separate property as including property “acquired by the spouse
during marriage by gift”).  A gift is a
“voluntary transfer of property to another made gratuitously and without
consideration.”  Magness v. Magness, 241 S.W.3d 910, 912 (Tex. App.—Dallas 2007,
pet. denied) (citing Hilley v. Hilley,
342 S.W.2d 565, 569 (Tex. 1961)); In re
L.R.P., 98 S.W.3d 312, 314 (Tex. App.—Houston [1st Dist.] 2003, pet.
dism’d) (“By definition, a gift is the voluntary transfer of property without
consideration or compensation.”).  To
establish the existence of a gift, the party must prove three elements:  (1) intent to make a gift; (2) delivery of
the property; and (3) acceptance of the property.  Magness,
241 S.W.3d at 912 (citing Panhandle
Baptist Found., Inc. v. Clodfelter, 54 S.W.3d 66, 72 (Tex. App.—Amarillo
2001, no pet.)).  A party establishes the
requisite donative intent by, among other things, presenting “evidence that the
donor intended an immediate and
unconditional divestiture of his or her ownership interests and an
immediate and unconditional vesting of such interests in the donee.”  Nipp v.
Broumley, 285 S.W.3d 552, 559 (Tex. App.—Waco 2009, no pet.) (emphasis in
original).

Here, the trial court characterized
the League City property as entirely community in nature, ordered the sale of
the property, and awarded forty-eight percent of the net proceeds to Douglas
and fifty-two percent of the net proceeds to Dierdre.  In its findings of fact, the trial court
found that the $72,000 down payment was made from community funds and was not a
gift from Douglas to Dierdre.  The court
also found that Douglas did not have the necessary donative intent to make a
gift to Dierdre—rather,
Douglas intended “to make a down payment on the community residence.”  The trial court further concluded that the
gift letter, offered by Dierdre as evidence of a gift, was neither valid nor
enforceable.

There is ample evidence in the
record to support the trial court’s findings that Douglas did not intend to
give the $72,000 to Dierdre as a gift. 
Douglas repeatedly testified that he did not intend for the $72,000 to
be a gift to Dierdre, but that, instead, he wire-transferred the money to the
title company “to put a down payment for a married couple’s home.”  Douglas stated that he obtained the $72,000
from a stock sale and, upon Dierdre’s instruction to make the down payment, he
transferred the money to the title company. 
Douglas understood that title to the house was to be in both his and
Dierdre’s names—and,
indeed, the deed lists both Douglas and Dierdre as grantees—and he did not intend for the house to be a
gift to Dierdre.  Both Douglas and
Dierdre agreed that they structured the transaction in this particular manner to
achieve the best possible interest rate and lowest possible monthly payments on
the mortgage.  Placing a large down
payment on the house and putting the mortgage documents solely in Dierdre’s
name allowed the parties to take advantage of her “great credit score” and to
avoid the negative impact of Douglas’s previous bankruptcy.

On appeal, Dierdre acknowledges
that she had the burden to establish that the $72,000 was her separate property
by clear and convincing evidence.  She
contends that the evidence regarding the property “was substantially not
disputed,” that Douglas “acknowledges the gift and did not dispute the authenticity
of the gift document,” and that “the fact of the gift was not contested.”  Dierdre offered the gift letter as evidence
that Douglas intended the $72,000 to be a gift to Dierdre and she testified
that he signed the letter on April 11, 2006, two days before closing on the
house.  Contrary to Dierdre’s assertions
on appeal, Douglas vigorously disputed the authenticity of the gift letter and
repeatedly testified that he did not intend for the $72,000 to be a gift to
Dierdre.[1]

According to the gift letter,
Douglas “certif[ied] that [he has] given a gift of $72,000 to [Dierdre] to be applied
toward the purchase of the [League City] property.”  This gift letter was dated April 11, 2006,
two days before closing, and Dierdre testified that Douglas signed the letter
before the closing because the mortgage company needed the document before
approving Dierdre for the loan.  Dierdre
stated that she discussed the transaction with Douglas and he knew that the
$72,000 was to be used for the down payment and that she did not intend for the $72,000 “to be anything other than a gift”
from Douglas.  Dierdre’s intent regarding
this transaction is irrelevant.  In
determining whether a transaction constitutes a gift, we look to whether the donor—here, Douglas—intended to
make a gift.  See Nipp, 285 S.W.3d at 559. 
Douglas acknowledged that the donor’s signature on the gift letter
“look[ed] like” his signature, but he repeatedly testified that he did not
remember signing a gift letter, that he first saw the gift letter at his
deposition during the divorce proceedings, that he was handed a stack of
documents at the closing and, therefore, if he did sign the letter, it must
have occurred at the closing, and that if the letter reflected that he signed
it before the closing, it was misdated.

As the fact-finder, the trial court
alone determines the credibility of the evidence and the witnesses, the weight
to give their testimony, and whether to accept or reject all or any part of
that testimony.  See Nordstrom v. Nordstrom, 965 S.W.2d 575, 580–81 (Tex.
App.—Houston [1st Dist.] 1997, pet. denied). 
In determining that the $72,000 was not a gift, the trial court
implicitly concluded that Dierdre failed to rebut the community presumption and
establish the separate property character of the funds by clear and convincing
evidence.  We conclude that, based upon
this record, the trial court reasonably could have concluded that Dierdre
failed to establish by clear and convincing evidence that Douglas intended the
$72,000 down payment to be a gift.  We
hold that legally and factually sufficient evidence supports the trial court’s
findings, and, therefore, Dierdre has not established that the trial court
abused its discretion in characterizing the $72,000 used for the down payment
on the League City house as community property. 
See Scott v. Scott, 805 S.W.2d
835, 840 (Tex. App.—Waco 1991, writ denied) (“Betty testified that she never
intended to make a gift of the certificate of deposit [held in her husband’s
name]; Herbert claimed just the opposite. 
The jury resolved the conflicting evidence on intent by finding that
Betty did not give the certificate of deposit to Herbert.  Legally and factually sufficient evidence
supported that finding.”).

We overrule Dierdre’s sole issue.

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.











[1]
          On appeal, Dierdre argues that
the trial court “found a meaning to the [gift letter] contrary to the plain
meaning” of the document, and because the letter was unambiguous, the trial
court abused its discretion in finding that Douglas did not intend for the
$72,000 to be a gift to Dierdre.  In its
conclusions of law, the trial court concluded that the gift letter offered by
Dierdre was not valid and enforceable and thus implicitly concluded that the
document was not credible evidence of Douglas’s intent.  Dierdre does not challenge this conclusion on
appeal and she makes no attempt to argue the validity of the letter.  Furthermore, to the extent Dierdre contends
that Douglas’s testimony regarding his donative intent, or lack thereof, is
parol evidence and inadmissible to vary the terms of the gift letter, we note
that Dierdre never objected to any of this testimony at trial.  See
Tex. R. App. P. 33.1(a)(1)(A)
(providing that, to preserve error, appellant must make timely request,
objection, or motion stating grounds for ruling with sufficient specificity to
make trial court aware of complaint).